1
2
3
4                        **UNITED STATES DISTRICT COURT**
5                        **EASTERN DISTRICT OF CALIFORNIA**
6

7  **MELISSA M. NEYLON and SHAWN P.**          **CASE NO. 1:16-CV-0712 AWI JLT**
   **NEYLON,**
8
                     **Plaintiffs**                **ORDER VACATING HEARING AND**
9                                                  **ORDER ON PLAINTIFFS' REQUEST**
                        **v.**                     **TO CONSIDER RECENT AUTHORITY**
10
   **COUNTY OF INYO, INYO COUNTY**
11 **SHERIFF'S OFFICE, BILL LUTZE,**             (Doc. No. 16)
   **DOUGLAS RICHARDS, and DOES 1 to**
12 **50,**

13                   **Defendants**

14

15

16        This case stems from the erroneous arrest by Inyo County Sheriff's deputies of Plaintiff

17 Melissa Neylon ("Neylon"), pursuant to an outstanding warrant from Indiana for a Melissa

18 Chapman.  Defendants now move under Rule 12(b)(6) to dismiss all claims alleged in the

19 Complaint.  Defendants' motion will be granted in part and denied in part.

20

21                        **LEGAL FRAMEWORK**

22        Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

23 plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). A

24 dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

25 absence of sufficient facts alleged under a cognizable legal theory.  See Mollett v. Netflix, Inc.,

26 795 F.3d 1062, 1065 (9th Cir. 2015).  In reviewing a complaint under Rule 12(b)(6), all well-

27 pleaded allegations of material fact are taken as true and construed in the light most favorable to

28 the non-moving party.  Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013).

1    However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation

2    of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v.

3    Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015).  The Court is "not

4    required to accept as true allegations that contradict exhibits attached to the Complaint or matters

5    properly subject to judicial notice, or allegations that are merely conclusory, unwarranted

6    deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media

7    Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a

8    complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

9    plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  "A claim has facial

10   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

11   inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers

12   v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Plausibility" means "more than a sheer

13   possibility," but less than a probability, and facts that are "merely consistent" with liability fall

14   short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.  The Ninth Circuit has

15   distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption

16   of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause

17   of action, but must contain sufficient allegations of underlying facts to give fair notice and to

18   enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as

19   true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing

20   party to be subjected to the expense of discovery and continued litigation. Starr v. Baca, 652 F.3d

21   1202, 1216 (9th Cir. 2011).  In assessing a motion to dismiss, courts may consider documents

22   attached to the complaint, documents incorporated by reference in the complaint, or matters of

23   judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If a motion

24   to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend

25   the pleading was made . . . ." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012).  However,

26   leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to

27   cure deficiencies despite repeated opportunities. See Mueller v. Aulker, 700 F.3d 1180, 1191 (9th

28   Cir. 2012); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

2

**FACTUAL BACKGROUND**

From the Complaint, Neylon was at the Inyo County Jail in connection with her employment on December 4, 2015.  At the Jail, Neylon was arrested and imprisoned based on an outstanding felony warrant from Indiana for a "Melissa Chapman" (generally hereinafter "Chapman")   Neylon's association with the Indiana warrant was solely based on an alleged hit on one of Neylon's former legal name, after the former legal name appeared on a database. Defendant Douglas Richards ("Richards"), a Sergeant with the Inyo County Sheriff's Office, mistakenly identified Neylon as Chapman.  Neylon alleges that the name-matching "hit" did not provide a sufficient basis to arrest her.  After Neylon's arrest, Richards received information about Chapman's height, weight, hair, eye color, and date of birth.  Neylon alleges that the subsequent information about Chapman was not conclusive and not sufficiently similar to Neylon.  Neylon was imprisoned and charged with a felony crime based on the Indiana warrant for Chapman.

On December 18, 2015, an Identity Hearing ("ID Hearing") before Judge Lamb of the Inyo County Superior Court was held.  Richards testified that there was a "Live Scan" fingerprint match between Neylon and Chapman.  This testimony was false.  There was no fingerprint match between Neylon and Chapman.[1]  Based in part on Richards's misrepresentation, Judge Lamb decided to continue to hold Neylon.

On December 21, 2015, Neylon was finally released from Jail, and employees of the Inyo County Sheriff's office  understood that Neylon was not in fact Chapman.

**DEFENDANTS' MOTION**

**I.**   **Request For Judicial Notice**

Defendants request that the Court take judicial notice of six exhibits, and Plaintiffs object to all of them.  The Court will address each exhibit separately.

---

[1] Defendants argue that Richards did not testify that there was a match between Neylon and Chapman.  Defendants cite multiple pages from the ID Hearing transcript.  Many of the pages cited, however, are irrelevant because the witness testifying is not Richards.  On pages 19, 20, 26, 27, and 28, Officer Rager is testifying.  On pages 32, 36, 37, and 41, Richards is testifying.  Page 32 contains general testimony regarding Live Scan.  Similarly, Page 41, lines 19 to 21 provides general information regarding Live Scan.  However, Page 36, line 22 to Page 37, line 3, contains the relevant statement from Richards, "Live Scan identified this person whom we - - whom we had printed with a person out of Indiana."  This portion of the ID Hearing seems to support Neylon's allegations.

1        <u>a.</u>    <u>Exhibit A -- Hearing Transcript</u>

2        Defendants request that the Court take judicial notice of the transcript from the ID Hearing.

3    Plaintiffs object that, although hearing transcripts may be judicially noticed, facts that are disputed

4    within the transcript may not be judicially noticed.  Further, Plaintiffs object that Defendants have

5    provided the entirety of the transcript without identifying which sections of the 139 pages they

6    believe are relevant and properly judicially noticed.

7        Federal courts may take judicial notice of orders and proceedings in other courts, including

8    transcripts.  <u>See</u> <u>Trigueros v. Adams</u>, 658 F.3d 983, 987 (9th Cir. 2011); <u>Engine Mfrs. Ass'n v.</u>

9    <u>South Coast Quality Maint. Dist.</u>, 498 F.3d 1031, 1039 n.2 (9th Cir. 2007) (taking judicial notice

10   of <i>inter alia</i> a transcript of an oral argument before the California Supreme Court); <u>Dawson v.</u>

11   <u>Mahoney</u>, 451 F.3d 550, 551 (9th Cir. 2006).  However, "[f]actual findings in one case ordinarily

12   are not admissible for their truth in another case through judicial notice." <u>Wyatt v. Terhune</u>, 315

13   F.3d 1108, 1114 n.5 (9th Cir. 2003).[2]  Thus, while judicial notice may be taken of the existence

14   and authenticity of public and quasi-public documents, the facts contained within those documents

15   which are subject to reasonable dispute may not be judicially noticed.  <u>See</u> <u>California ex rel.</u>

16   <u>RoNo, LLC v. Altus Finance S.A.</u>, 344 F.3d 920, 931 & n.8 (9th Cir. 2003); <u>Cactus Corner, LLC</u>

17   <u>v. United States Dep't of Agric.</u>, 346 F.Supp.2d 1075, 1100 (E.D. Cal. 2004).

18       The Court will take judicial notice of the ID Hearing transcript.  <u>See</u> <u>Engine Mfrs.</u>, 498

19   F.3d at 1039 n.2.  However, the Court will not take judicial notice of reasonably disputed facts,

20   <u>see</u> <u>Altus Finance</u>, 344 F.3d at 931 & n.8, and the Court will not sift through all 139 pages of the

21   transcript, but may occasionally stray from the specific pages cited by Defendants.  <u>Cf.</u> <u>Liberi v.</u>

22   <u>Taitz</u>, 2014 U.S. Dist. LEXIS 185204, *10 (C.D. Cal. Feb. 7, 2014).

23       <u>b.</u>    <u>DMV Record & Warrant Record</u>

24       Defendants request that the Court take judicial notice of the DMV record of Neylon and

25   the warrant record of Chapman that were both generated in connection with Neylon's attempt to

26   enter the Inyo County Jail.  These documents provide information regarding both Chapman's and

27   Neylon's respective dates of birth, weights, races, former names or aliases, and hair and eye

28

---

[2] Overruled on other grounds, <u>Albino v. Barca</u>, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).

colors, and heights.  Plaintiffs object that the documents are not really a public record because they are stamped "For Law Enforcement Purposes Only" and "treat disclosed material as confidential."

Plaintiffs' objection is sound.  For a court to take judicial notice of a document as a "public document," the document must have been made publicly available by a government entity.  See Reynolds v. Hedgpeth, 472 Fed. Appx. 595, 598 (9th Cir. 2012); Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  Even if a document is maintained by a public entity, if the document is for internal use and accessible only by the personnel of the public entity, then the document has not been made publically available and is not the proper subject of judicial notice. Reynolds, 472 Fed. Appx. at 598.  Here, there is no indication that the DMV record or the warrant record has been made available to the public.  In fact, the opposite is true.  The declaration of Buna Felton, a dispatcher at the Inyo County Sheriff's office, indicates that the documents are generated and used by law enforcement; she does not indicate that the public may access the records.  See Felton Dec. ¶¶ 2-7.[3]  Moreover, the stamps "For Law Enforcement Purposes Only" and "treat disclosed material as confidential" clearly indicate that the documents are for internal law enforcement uses only and have not been made available to the public.[4]  Cf. Reynolds, 472 Fed. Appx. at 598.  Therefore, the Court will not take judicial notice of the warrant record or the DMV record.[5]  See id.; Daniels-Hall, 629 F.3d at 998.

[3] Citing inter alia Gerritsen v. Warner Bros. Entm't, Inc., 112 F.Supp.3d 1011, 1021 (C.D. Cal. 2015), Plaintiffs object to consideration of Felton's declaration.  The declaration authenticates Exhibits B (the DMV record) and C (the warrant record) to the request for judicial notice, explains what the NCIC database (the source of the warrant record) is, and explains what information can be collected from the DMV database.  See Doc. No. 12-4 at ¶¶ 2, 4, 7, 8.  This information is relevant to determining whether the Court should judicially notice Exhibits B and C.  See Gerritsen, 112 F.Supp.3d at 1020.  This is the only information that the Court will consider from the Felton declaration, and the Court will only consider this information in connection with the request for judicial notice.  See id.; cf. Baldin v. Wells Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 29728, *3 n.2 (D. Or. Feb. 12, 2013) ("The exhibits attached to the Kiolbasa Declaration may be considered by the court at this stage of the proceedings as those exhibits are either a matter of public record . . . .").  The Court will not consider the Felton declaration for purposes of deciding the merits of the Rule 12(b)(6) motion.  See Gerritsen, 112 F.Supp.3d at 1020-21.

[4] In reply, Defendants argue inter alia that DMV records are typically the subject of judicial notice.  That is true.  E.g. Snyder v. Enterprise Rent-A-Car Co., 392 F.Supp.2d 1116, 1120 n.2 (N.D. Cal. 2005).  However, the DMV record at issue, Exhibit B to the Request for Judicial Notice, states that it is a "DMV Record For Law Enforcement Use Only."  This statement is in addition to the ink stamps "For Law Enforcement Purposes Only" and "treat disclosed material as confidential," that are also on Exhibit B.  The stamps and text of Exhibit B show that it is not a publically available record, rather it is a record that is restricted to law enforcement only.  Thus, it is not the proper subject of judicial notice.  See Reynolds, 472 Fed. Appx. at 598.

[5] The Court notes that it does not appear that either the DMV record or the warrant record was admitted at the ID Hearing.  See Fessenden Dec. Ex. F.

1          c.     Bench Warrant

2          Defendants request that the Court take judicial notice of a May 20, 2004 Bench Warrant

3    for "Melissa Chapman" that was referenced in the Criminal Minute Order following the ID

4    Hearing.  Plaintiffs object that the unauthenticated bench warrant is not relevant to this motion.

5          The bench warrant is referenced in the Inyo Superior Court's minute order.  See Fessenden

6    Dec. ¶ 4 & Ex. D.[6]  Courts may properly take judicial notice of a bench warrant as a matter of

7    public record.  See Niesen v. Garcia, 2016 U.S. Dist. LEXIS 86890, *2-*3 & n.1 (E.D. Cal. July 5,

8    2016); Farmer v. City of Spokane, 2015 U.S. Dist. LEXIS 100622, *5-*6 (E.D. Wash. July 30,

9    2015).  However, if an exhibit is irrelevant or unnecessary to deciding the matters at issue, a

10   request for judicial notice may be denied.  See Adriana Intern. Corp. v. Thoeren, 913 F.2d 1406,

11   1410 n. 2 (9th Cir. 1990); Thompson v. DeLallo's Italian Foods, Inc., 63 F.Supp.3d 1200, 1205

12   n.4 (E.D. Cal. 2014).  Here, the warrant's relevance to Defendants' motion is unclear.  Neylon

13   does not challenge the existence of the warrant, and it appears that the parties agree that there

14   actually was an Indiana warrant for Chapman.  Further, for the Court to resolve the parties'

15   arguments in this motion, it does not need the warrant itself.  Without more from Defendants, and

16   given the parties' apparent agreement as to the existence of an arrest warrant for Chapman, the

17   Court declines to judicially notice the bench warrant at this time.  See id.

18         d.     Wanted Flyer

19         Defendants request that the Court take judicial notice of the Wanted Flyer for Chapman

20   that was referenced in the Criminal Minute Order following the ID Hearing.  Plaintiffs object that

21   the flyer may be unreliable as it comes from a third party's website (the Dearborn County Sheriff's

22   Office) that no longer appears to exist, and the flyer has no direct relation to the matters at issue.

23         The Wanted Flyer is referenced in the Inyo Superior Court's minute order, and the flyer

24

25   [6] Citing inter alia Gerritsen, Plaintiffs object to consideration of the declaration of defense counsel Carl Fessenden.
     Plaintiffs are correct that it is generally improper to consider exhibits and declarations that are filed in support of a
26   motion to dismiss.  See Gerritsen, 112 F.Supp.3d at 1021.  However, Fessenden's declaration is made in support of
     the request for judicial notice.  See Doc. No. 12-2.  "Declarations may be used to bring materials that are properly
27   considered to the attention to the Court."  Gerritsen, 112 F.Supp.3d at 1020; cf. Baldin, 2013 U.S. Dist. LEXIS 29728
     at*3 n.2.  The Court only considers Fessenden's declaration for the purpose of ruling on the request for judicial notice;
28   the Court does not consider the Fessenden declaration for purposes of deciding the merits of the of Rule 12(b)(6)
     motion.  See Gerritsen, 112 F.Supp.3d at 1020-21

                                        6

itself indicates that it came from the Dearborn County Sheriff's website.  <u>See</u> Fessenden Dec. ¶ 5 & Ex. E.  Generally, information from the websites of governmental entities is the proper subject of judicial notice.  <u>See</u> <u>DJO Global Inc.</u>, 48 F.Supp.3d at 1381.  However, while the Dearborn County Website (dearborncounty.org) does exist, the "most wanted" webpage (dearborncounty.org/sheriff/mostwanted/htm) from that website currently does not exist.  Neither party has submitted authority regarding defunct webpages.   Nevertheless, if a webpage no longer exists, it would seem that the web page can no longer be accessed by the public and could no longer be considered a readily determinable source.  <u>See</u> Fed. R. Civ. P. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.").  In the absence contrary authority, the Court will decline to take judicial notice of the Wanted Flyer as a government webpage at this time.  Nevertheless, the Wanted Flyer was admitted into evidence as part of the ID Hearing (without objection by Neylon's counsel), was considered by Judge Lamb, and is referenced in the Superior Court's minute order.  <u>See</u> Fessenden Dec. Exs. A at pp. 66-67 & F.  Therefore, the Wanted Flyer is part of the Superior Court's record. The Court will take judicial notice of the flyer in this motion for the limited purpose of showing what information was presented to and considered by Judge Lamb during the ID Hearing.[7]  <u>Cf.</u> <u>United States v. 14.02 Acres</u>, 547 F.3d 943, 955 (9th Cir. 2008) (holding that the district court properly viewed an administrative report for the limited purpose of background material).

      <u>e.</u>    <u>Inyo County Superior Court Minute Order</u>

Finally, Defendants request that the Court take judicial notice of the Criminal Minute Order issued following the ID Hearing.  <u>See</u> Fessenden Dec. ¶ 6 & Ex. F.  Plaintiffs object that it is not proper to take judicial notice of findings of fact contained in the minute order.

Federal courts may take judicial notice of the proceedings from other courts, including judgments, orders, and minutes.  <u>See</u> <u>Trigueros</u>, 658 F.3d at 987; <u>Quackenbush v. Allstate Ins. Co.</u>, 121 F.3d 1372, 1377 n.3 (9th Cir. 1997).  However, facts and factual findings contained

---

[7] The Court is not holding that the Wanted Flyer cannot be admitted without limitation during a different aspect of this case.  The Court's holding is limited to the context of this Rule 12(b)(6) motion and this request for judicial notice.

1   within court documents generally are not the proper subject of judicial notice.  See Altus Finance,

2   344 F.3d  931 & n.8 (9th Cir. 2003); Wyatt, 315 F.3d at 1114 n.5; Cactus Corner, 346 F.Supp.2d

3   at 1099-1100.  As with the ID Hearing transcript, the Court will take judicial notice of the minute

4   order, see Quackenbush, 121 F.3d at 1377 n.3, but the Court will not take judicial notice of

5   reasonably disputed facts or factual findings within the minute order.  See Altus Finance, 344 F.3d

6   at 931 & n.8; Wyatt, 315 F.3d at 1114 n.5.

7

8   **II.    First & Sixth Cause of Action – 42 U.S.C. § 1983 False Arrest & False Imprisonment**

9        *Defendant's Argument*

10         Defendants argue that there was a valid arrest warrant for Chapman.  Neylon alleges that

11   there was a "hit" for that warrant based on one of Neylon's former names.  Further, the DMV

12   records (which the officers relied on in making the arrest decision), indicated that three of

13   Neylon's former names matched three aliases used by Chapman.  Further, both Neylon and

14   Chapman were 5' 3" tall, had brown eyes, a similar birthdate, were within 15 lbs. of listed weight

15   (115 lbs. for Neylon and 130 lbs. for Chapman), and Judge Lamb concluded that the physical

16   appearance between Neylon and photo of Chapman were sufficiently similar that the resemblances

17   were "startling."  Also, the Wanted Flyer stated that Chapman may be operating under an assumed

18   identity and that she may have travelled to the West Coast.  These facts would cause any

19   reasonable officer to conclude that probable cause existed to arrest Neylon.

20         Defendants also argue that Judge Lamb's finding that there was probable cause to hold

21   Neylon on the Indiana warrant collaterally estops Neylon from arguing that probable cause did not

22   exist.  Judge Lamb's finding was based on several grounds, most of which were connected to

23   testimony by various Inyo County employees.  Although Neylon alleges that Richards testified

24   that there was a Live Scan fingerprint match between Neylon and Chapman, the transcript of the

25   hearing is to the contrary.  Richards and Inyo County Sheriff's Deputy Chad Rager stated several

26   times that the Live Scan showed that the scanned fingerprints belonged to Neylon and not some

27   other person.

28         In the alternative, Defendants contend that Neylon alleges that the arrest violated the

8

1  Fourth and Fourteenth Amendments.  Reliance on the Fourteenth Amendment is improper because

2  the Fourth Amendment governs the reasonableness of an arrest.

3        Finally, with respect to the sixth cause of action for state law false arrest/false

4  imprisonment, Defendants argue that they are immune from liability under Civil Code § 43.55 and

5  Penal Code § 847.

6        *Plaintiffs' Opposition*

7        Neylon argues that many of Defendants' arguments are factual attacks, which are

8  inappropriate in deciding a Rule 12(b)(6) motion.  The allegations in the Complaint allege that

9  Richards did not have probable cause and explains why.

10        Neylon also argues that her claims are not subject to collateral estoppel for two reasons.

11  First, additional information was presented at the ID Hearing that was not available to Richards.

12  Second, it is alleged that Richards lied to Judge Lamb regarding the results of the Live Scan.

13        Neylon also argues that reference to the Fourteenth Amendment is proper because the

14  Fourth Amendment was incorporated against the States through the Fourteenth Amendment.

15        Finally, Neylon argues that immunity under Civil Code § 43.55 and Penal Code § 847 does

16  not apply because the Complaint alleges that Richardson did not have a reasonable belief that

17  Neylon was Chapman, or that he otherwise had probable cause to arrest Neylon.

18        *Legal Standard*

19        "[W]hen the police have probable cause to arrest one party, and when they reasonably

20  mistake a second party for the first party, then the arrest of the second party is a valid arrest."  Hill

21  v. California, 401 U.S. 797, 802 (1971).  If the wrong person is arrested under a facially valid

22  warrant, "the question is whether the arresting officers had a good faith, reasonable belief that the

23  arrestee was the subject of the warrant."  Rivera v. County of Los Angeles, 745 F.3d 384, 389 (9th

24  Cir. 2014); see also Hill v. Scott, 349 F.3d 1068, 1072 (8th Cir. 2003).  "[S]ufficient probability,

25  not certainty, is the touchstone of reasonableness under the Fourth Amendment . . . ."  Hill, 401

26  U.S. at 804; Rivera, 745 F.3d at 389.  The reasonableness of the officer's belief is determined "by

27  looking at the totality of the circumstances surrounding the arrest to determine its reasonableness."

28  Scott, 349 F.3d at 1073; United States v. Glover, 725 F.2d 120, 122 (D.C. Cir. 1984).

1    *Discussion*

2         Neylon does not challenge the existence of the Indiana warrant or allege that the Indiana

3    warrant was invalid.  The issue is whether Defendants reasonably believed that Neylon was

4    Chapman.  See Rivera, 745 F.3d at 389; Scott, 349 F.3d at 1072.

5         The Complaint does not provide a great deal of detail regarding the circumstances

6    surrounding Neylon's arrest.  The Complaint alleges that Neylon was lawfully in the jail for

7    purposes of employment.  See Doc. No. 1 at ¶ 13.  Apparently during the process of entering the

8    jail, there was a name-matching "hit" on one of Neylon's former legal names, which matched an

9    alias used by Chapman.  See id. at ¶¶ 15, 16.  Neylon was then placed under arrest.  See id. at ¶ 16.

10   Thus, the decision to arrest was based on the single former name "hit" and nothing else.  Id.

11        Viewing the allegations in the light most favorable to Neylon, see Faulkner, 706 F.3d at

12   1019, the circumstances described in the Complaint do not indicate a reasonable belief that Neylon

13   was Chapman.  No characteristics or other information were considered prior to the arrest, other

14   than the one "hit" on one of Neylon's former names, and it is unknown which former name was

15   actually "hit."  Cf. Simons v. County of Marin, 682 F.Supp. 1463, 1472 (N.D. Cal. 1987) (holding

16   *inter alia* that "there was little if any reason, other than a superficial congruence of names, to

17   believe that the plaintiff was in fact the man sought by the warrant.  First, none of the defendants

18   disputes that the warrant should not have been served based solely on the information provided by

19   running 'Fred M. Simons' through the DMV computer.  The name is far too common . . . .").

20   Also, this was not a situation in which officers were making an arrest in the field, attempting to

21   execute the warrant at a particular address, or facing exigent circumstances.  This arrest was made

22   within the jail during a routine entry, and the allegations do not suggest that time was of the

23   essence or that further investigation was impractical.  Cf. Garcia v. County of Riverside, 817 F.3d

24   635, 643 (9th Cir. 2016) (in the context of misidentification cases, distinguishing cases because

25   "arresting officers in the field . . . cannot always pause to make inquiries on a warrant.").  No cases

26   have been cited in which probable cause to arrest has been found under similar circumstances.

27        Defendants rely on additional characteristics of Chapman that are allegedly the same or

28   similar to characteristics of Neylon.  There is no dispute that additional information was received

1  by Defendants concerning Chapman's height, weight, hair and eye color, and birth date.  See Doc.

2  No. 1 at ¶ 16.  However, the Complaint alleges that this information was received after the arrest

3  had been made.  See id.  The Court is required to accept this allegation as true, see Faulkner, 706

4  F.3d at 1019, and then examine the circumstances "surrounding the arrest."  Scott, 349 F.3d at

5  1073; Glover, 725 F.2d at 122   In the context of a warrantless arrest, probable cause is determined

6  on the basis of the facts that were known at the time the arrest is made.  Rosenbaum v. Washoe

7  County, 663 F.3d 1071, 1076 (9th Cir. 2011).  The Court is unaware of a reason to apply a

8  different rule in the context of an arrest made pursuant to a warrant.  Therefore, in assessing the

9  reasonableness of an officer's belief that the person arrested is the subject of an arrest warrant, the

10  facts known and the totality of the circumstances as they existed at the time the arrest is made are

11  the facts and circumstances that must be analyzed.  See Rosenbaum, 663 F.3d at 1076; Scott, 349

12  F.3d at 1073; Glover, 725 F.2d at 122.  Under this rule, the information concerning Chapman's

13  height, weight, hair and eye color, and birth date cannot be considered in assessing the

14  reasonableness of the arrest because that information was received post-arrest.  As a result, the

15  arrest was only made based on a single former name hit, which does not show reasonableness.

16      Defendants contend that Judge Lamb's decision at the ID Hearing collaterally estops

17  Neylon from alleging a lack of probable cause.  The Court cannot agree.  First, facts and evidence

18  were presented at the ID Hearing that were not available or not considered by Richards at the time

19  he arrested Neylon.  For example, a copy of the Indiana warrant and the wanted flyer, which

20  included Chapman's height, weight, hair and eye color, and birth date, were presented at the ID

21  Hearing, but were not considered at the time of arrest.  Cf. Wige v. City of Los Angeles, 713 F.3d

22  1183, 1186 (9th Cir. 2013) ("First, issue preclusion does not apply in false arrest actions when

23  additional evidence not available to the officers at the time of arrest is presented at the preliminary

24  hearing . . . .").  Second, the purpose of the ID Hearing was not to determine whether the decision

25  to arrest was supported by probable cause.  See RJN Ex. 1 at 57:15-25.  Both the prosecutor and

26  defense counsel acknowledged that the purpose of the hearing was not to present evidence about

27  the arrest or to establish probable cause for the arrest.  Id.  The purpose of the ID Hearing was to

28  determine whether probable cause existed, at the time of the hearing, to conclude that Neylon was

1  Chapman.  See id. & p. 130.  When Judge Lamb issued his decision, he concluded that there was

2  probable cause that Neylon was Chapman.  See id. p. 130.  Judge Lamb did not determine that, at

3  the point in time in which Neylon was arrested, the arrest was supported by probable cause.  See

4  id.  Therefore, the issue of probable cause to arrest was not decided.  Because this key issue was

5  not actually decided by Judge Lamb, collateral estoppel will not bar Neylon's claim for false

6  arrest.  See Lucido v. Superior Ct., 51 Cal.3d 335, 341 (1990) (holding that issue preclusion

7  requires *inter alia* that the issue sought to be re-litigated must be identical to an issue decided in

8  the earlier action); see also Wige, 713 F.3d at 1184-86.[8]

9        With respect to Defendants' reliance on the privileges in Civil Code § 43.55 and Penal

10  Code § 847, these privileges shield law enforcement officers from liability if an officer reasonably

11  believes that a person is the subject of a warrant or reasonably believes that an arrest is lawful.

12  See Cal. Civ. Code § 43.55(a);[9] Cal. Pen. Code § 847(b);[10] see also Garcia, 817 F.3d at 644.

13  Again, Defendants have cited no authority that indicates that an arrest under a warrant based solely

14  on a "hit" on a former name makes the arrest reasonable.  Because the Complaint does not indicate

15  reasonableness at the time the arrest was made, the Court cannot hold that Civil Code § 43.55 or

16  Penal Code § 847 shield Defendants from Neylon's state law claim for false imprisonment.  See

17  Garcia, 817 F.3d at 644-45 ("These statutes do not shield Defendants from liability under state law

18  because their application is premised on reasonable beliefs, and the crux of Plaintiff's claim is that

19  it was unreasonable for officers to believe that he was the person who described in the warrant

20  without greater investigation.").

21        Finally, with respect to the Fourteenth Amendment, Neylon is correct that the Fourteenth

22  Amendment is the conduit for Fourth Amendment protections against a State.  See Mapp v. Ohio,

23

24  [8] Federal courts will give preclusive effect to state court judgments whenever the courts of the state from which the judgment emerged would do so.  Wige, 713 F.3d at 1185.  Because Defendants rely on a judgment from the California Superior Court, this Court will apply California law regarding issue preclusion.  See id.

25

26  [9] Section 43.55, in pertinent part, precludes causes of action against "any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face," if the officer "acts without malice and in the reasonable  belief that the person arrested is the one referred to in the warrant."  Cal. Civ. Code § 43.55(a).

27

28  [10] Section 847, in pertinent part, prohibits causes of action against any peace officer, acting within his authority, "for false arrest or false imprisonment arising out of any arrest," if the officer at least "had reasonable cause to believe the arrest was lawful."  Cal. Penal Code § 847(b).

1   367 U.S. 643 (1961); Lee v. City of Chicago, 330 F.3d 456, 460 n.1 (7th Cir. 2003).  "Despite the

2   confusion that tends to result, courts have acknowledged that it is acceptable to reference the

3   Fourteenth Amendment as a conduit for the Fourth Amendment."  Holcomb v. Ramar, 2013 U.S.

4   Dist. LEXIS 157833, *9 (E.D. Cal. Nov. 1, 2013) (and cases cited therein).  In light of Neylon's

5   opposition, the Court will read the first cause of action as alleging only a Fourth Amendment

6   claim.  See id. at *9-*10.  So reading the allegations under the first cause of action, there is no

7   need to dismiss a nonexistent Fourteenth Amendment claim.  See id. at *10.

8      In sum, dismissal of the first and sixth causes of action is inappropriate at this time as the

9   circumstances described in the Complaint do not indicate a reasonable belief that Neylon was

10  Chapman.[11]

11

12  **III.**   **Second & Seventh Causes of Action – 42 U.S.C. § 1983 Excessive Force & Battery**

13          *Defendants' Argument*

14      Defendants argue that the Complaint does not state a claim for excessive force or battery.

15  There are no factual allegations regarding the use of force, and there is no indication that any

16  action by the Defendants constituted unreasonable force.

17          *Plaintiff's Opposition*

18      Neylon argues that the Complaint alleges that Defendants used unreasonable force to

19  detain her.  The Complaint shows a false arrest and false imprisonment, therefore there was no

20  basis for an arrest and no basis to use any amount of force to arrest or imprison Neylon.

21          *Legal Standard*

22      All claims that law enforcement officers used excessive force, either deadly or non-deadly,

23  in the course of an arrest, investigatory stop, or other seizure of a citizen are to be analyzed under

24  the Fourth Amendment and its standard of objective reasonableness.  See Scott v. Harris, 550 U.S.

25  372, 381-83 (2007).  The pertinent question in excessive force cases is whether the use of force

26  was "objectively reasonable in light of the facts and circumstances confronting [the officers],

27
_____

28  [11] The parties in their arguments make no distinction between the state law false imprisonment claim and the § 1983 false arrest claim.  In the absence of any distinction from the parties, the Court's analysis for the § 1983 false arrest claim will also apply to the state law false imprisonment claim.

1    without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397

2    (1989). "We first assess the quantum of force used to arrest [the plaintiff]" and then "measure the

3    governmental interests at stake by evaluating a range of factors." Liberal v. Estrada, 632 F.3d

4    1064, 1079 (9th Cir. 2011). The objective inquiry into reasonableness is inherently fact specific.

5    See Green v. City & Cnty. of San Francisco, 751 F.3d 1039, 1049 (9th Cir. 2014).

6        *Discussion*

7        The second and seventh causes of action incorporate by reference allegations that describe

8    entering the jail, being arrested, and then appearing at the ID Hearing. See Doc. No. 1 at ¶¶ 12-25,

9    38, 67. There is also an allegation that Defendants "used unreasonable force to detain and arrest

10   [Neylon]," Id. at ¶ 40, and that Defendants "intentionally touched [Neylon] when they used

11   unreasonable force to arrest and imprison her . . . ." Id. at ¶ 68.

12       The problem with Neylon's allegations is that they nowhere describe what kind of force

13   was actually used against Neylon. Simply alleging that unreasonable or excessive force was used

14   is an insufficient legal conclusion. See Iqbal, 556 U.S. at 678; Soto-Torres v. Fraticelli, 654 F.3d

15   153, 157 n.2 (1st Cir. 2011); Felarca v. Birgeneau, 2013 U.S. Dist. LEXIS 24769, *22 (N.D. Cal.

16   Feb. 22, 2013). Neylon seems to argue that because her arrest was without probable cause, every

17   action or touching that was used to effectuate her arrest was per se excessive and unreasonable.

18   That is incorrect. "Because the excessive force and false arrest factual inquiries are distinct,

19   establishing a lack of probable cause to make an arrest does not establish an excessive force claim,

20   and vice-versa." Velazquez v. City of Long Beach, 793 F.3d 1010, 1024 (9th Cir. 2015); Beier v.

21   City of Lewiston, 354 F.3d 1058, 1064 (9th Cir. 2004). "Just proving lack of probable cause for

22   the arrest . . . does not establish that the police used excessive force, or, indeed, any force."

23   Velazquez, 793 F.3d at 1024. Since the Complaint contains no factual allegations that identify

24   any quantum of force, no excessive force or state law battery claim is stated and dismissal is

25   appropriate.[12]

26

27   ──────────────────
     [12] A California battery claim against a peace officer is the state law counterpart of a federal excessive force claim
     under 42 U.S.C. § 1983. Harding v. City & County of San Francisco, 602 Fed. Appx. 380, 384 (9th Cir. 2015); J.P. v.
28   City of Porterville, 801 F.Supp.2d 965, 990 (E.D. Cal. 2011). Thus, the failure to identify any quantum of force is
     fatal to both the § 1983 claim and the battery claim. See J.P., 801 F.Supp.2d at 990 (and cases cited therein).

**IV.**   **Third Causes of Action – 42 U.S.C. § 1983 Inadequate Investigation**

*Defendants' Argument*

Defendants argue that a Fourteenth Amendment failure to investigate claim is limited to circumstances in which the officers disregard obvious evidence that they have arrested the wrong person.  The Complaint does not allege any obvious differences between her and Chapman, and Judge Lamb found that the resemblance between the two was startling.  Therefore, Neylon has no viable claim.

*Plaintiff's Opposition*

Neylon argues that the Complaint alleges that Defendants maintained inadequate policies regarding misidentification of persons, that there was an insufficient basis to arrest and imprison Neylon, and that the additional information obtained after the arrest was insufficient to establish probable cause.  Neylon argues that Defendants' arguments are nothing more than improper factual attacks, and dismissal is not proper.

*Legal Standard*

An incarceration based on mistaken identity may violate the Due Process Clause of the Fourteenth Amendment.  Garcia, 817 F.3d at 640; Rivera, 745 F.3d at 390.   A mistaken incarceration violates Due Process in at least two situations: "(1) the circumstances indicated to the defendants that further investigation was warranted, or (2) the defendants denied the plaintiff access to the courts for an extended period of time."  Garcia, 817 F.3d at 640; Rivera, 745 F.3d at 391.  However, the cases falling under the "further investigation" category involve significant differences between the arrestee and the true warrant subject.  Garcia, 817 F.3d at 640; Rivera, 745 F.3d at 391.

*Discussion*

It is not uncommon for an arrestee to claim that she is innocent or the victim of mistaken identity.  See Rivera, 745 F.3d at 391-92.  It is likely for this reason that, in order to constitute a Due Process "further investigation" claim, the circumstances must reflect significant differences between the arrest and the true warrant subject.  See id. at 391.  Defendants contend that because no such differences are identified in the Complaint, no plausible claim is stated.  The Court agrees.

1     The Complaint alleges that Neylon was arrested based on a single former name "hit."

2   After Neylon was arrested, the Complaint alleges that Defendants received information about

3   Chapman's height, weight, hair and eye color, and date of birth, but this information was "not

4   conclusive or sufficiently similar to [Neylon.]"  Doc. No. 1 at ¶ 17.  The Complaint does not

5   identify Chapman's height, weight, hair and eye color, and date of birth, nor does the Complaint

6   identify Neylon's height, weight, hair and eye color, and date of birth.  No differences are actually

7   identified in the Complaint, let alone "significant differences."  Simply alleging that the

8   information was not conclusive or was not sufficiently similar is too conclusory.  Because the

9   Complaint does not contain factual allegations that reflect some "significant difference," no

10  plausible cause of action is stated and dismissal is appropriate.  See Iqbal, 556 U.S. at 678; Garcia,

11  817 F.3d at 640; Rivera, 745 F.3d at 391.

12

13  **IV.**     **Fourth & Fifth Causes of Action – *Monell* Liability**

14      *Defendants' Argument*

15      Defendants argue that the Complaint makes only conclusory allegations against the entity

16  defendants.  No plausible claims are stated because there are no facts that show *Monell* liability.

17  Similarly, the Complaint makes conclusory allegations against Sheriff Lutze.  There are no

18  allegations of personal involvement, or that this type of situation has ever occurred in the past.

19      *Plaintiff's Opposition*

20      Neylon argues that plaintiffs rarely have access to specific facts regarding municipal

21  policies, so only minimal facts need be pled.  Neylon argues that the complaint identifies the

22  deficient policies and training, explains that they were deficient because they permitted an arrest

23  and misidentification, and were the moving force behind her injuries.  Further, the identified

24  deficiency, a failure to institute policies and training to ensure that a person arrest is actually the

25  subject of the warrant, is so obvious that a violation of rights is the probable consequence.

26      With respect to supervisor liability, Neylon argues it is not necessary to argue that Sheriff

27  Lutze personally participated in the violation of Neylon's rights.  He may be liable for setting in

28  motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others

1   which he knew or should have known would cause others to inflict a constitutional injury.  The

2   Complaint properly alleges that Lutze maintained policies or training that were constitutionally

3   deficient and which gave rise to Neylon's injuries.

4       _Legal Standard_

5       Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be

6   liable for causing a constitutional deprivation.  <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658,

7   690 (1978); <u>Castro v. County of L.A.</u>, 797 F.3d 654, 670 (9th Cir. 2015).  A municipality,

8   however, "cannot be held liable solely because it employs a tortfeasor or, in other words, a

9   municipality cannot be held liable under [42 U.S.C. § 1983] under a _respondeat superior_ theory."

10  <u>Monell</u>, 436 U.S. at 691; <u>see</u> <u>Castro</u>, 797 F.3d at 670.  Liability only attaches where the

11  municipality itself causes the constitutional violation through "execution of a government's policy

12  or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

13  represent official policy."  <u>Monell</u>, 436 U.S. at 694; <u>Price v. Sery</u>, 513 F.3d 962, 966 (9th Cir.

14  2008).  Municipal liability may be premised on: (1) conduct pursuant to a formal or expressly

15  adopted official policy; (2) a longstanding practice or custom which constitutes the "standard

16  operating procedure" of the local government entity; (3) a decision of a decision-making official

17  who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly

18  be said to represent official policy in the area of decision; or (4) an official with final

19  policymaking authority either delegating that authority to, or ratifying the decision of, a

20  subordinate.  See <u>Thomas v. County of Riverside</u>, 763 F.3d 1167, 1170 (9th Cir. 2014); <u>Price</u>, 513

21  F.3d at 966.  A failure to train or inadequate training may form the basis for municipal liability

22  under § 1983 where the training or failure to train amounts to deliberate indifference to the rights

23  of the persons with whom the municipality's employees come into contact.  <u>Flores v. County of</u>

24  <u>L.A.</u>, 758 F.3d 1154, 1158 (9th Cir. 2014); <u>Long v. County of L.A.</u>, 442 F.3d 1178, 1186 (9th Cir.

25  2006).  Under such a theory, the "issue is whether the training program is adequate and, if it is not,

26  whether such inadequate training can justifiably be said to represent municipal policy."  <u>Long</u>, 442

27  F.3d at 1186.  ).  "Mere negligence in training or supervision . . . does not give rise to a _Monell_

28  claim."  <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900 (9th Cir. 2011).  Further, "adequately

1   trained officers occasionally make mistakes; the fact that they do says little about the training

2   program or the legal basis for holding the [municipality] liable." City of Canton v. Harris, 489

3   U.S. 378, 391 (1989). Thus, a "pattern of similar constitutional violations by untrained employees

4   is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."

5   Connick v. Thompson, 563 U.S. 51, 62 (2011); Flores, 758 F.3d at 1159. However, "in a narrow

6   range of circumstances," a pattern of similar violations may not be necessary where violations of

7   constitutional rights are the "highly predictable consequence" of a failure to train. Connick, 563

8   U.S. at 63. Allegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where

9   they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3)

10   explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom

11   amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the

12   constitutional injury was likely to occur. McFarland v. City of Clovis, 163 F.Supp.3d 798, 802

13   (E.D. Cal. 2016); Young v. City of Visalia, 687 F. Supp. 2d 1141, 1149-50 (E.D. Cal. 2009).

14        Additionally, under 42 U.S.C. § 1983, "supervisory officials are not liable for actions of

15   subordinates on any theory of vicarious liability." Crowley v. Bannister, 734 F.3d 967, 977 (9th

16   Cir. 2013); Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989). Rather, a supervisor may be

17   liable in his individual capacity under § 1983 "only if there exists either (1) his or her personal

18   involvement in the constitutional deprivation, or (2) a sufficient causal connection between the

19   supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977;

20   Hansen, 885 F.2d at 646. Thus, a "supervisor can be liable in his individual capacity for his own

21   culpable action or inaction in the training, supervision, or control of his subordinates, for his

22   acquiesce[nce] in the constitutional deprivations of which [the] complaint is made, or for conduct

23   that showed a reckless or callous indifference to the rights of others." Henry A., 678 F.3d at 1004;

24   see Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).

25   *Discussion*

26        Under the fourth cause of action, the Complaint alleges in pertinent part:

27   Defendants Lutze [and Does], acting or purporting to act in the performance of
   their official duties as policy-making authorities on behalf of [Inyo County and the
28   Inyo County Sheriff's Office], maintained inadequate policies, customs, or

practices permitting or deliberately indifferent to (1) misidentification of persons, through failure to investigate and confirm identity of the subject of an arrest warrant prior to effectuating arrest and/or incarceration pursuant to that warrant; (2) misidentified persons' complaints that they had been misidentified and improperly arrested or incarcerated. Those inadequate policies, customs, or practices were the moving force behind the violation of [Neylon's] Fourth and Fourteenth Amendment rights . . . .

Doc. No. 1 at ¶ 50. The fifth cause of action is the same, but instead of "maintained inadequate policies, customs, or practices," the fifth cause of action states "maintained inadequate training, supervisor [sic], and/or discipline." Id. at ¶ 56. The Court will examine these allegations separately with respect to the entity defendants and Sheriff Lutze.

> 1.   *Monell* Claims Against Inyo County and Inyo County Sheriff's Office

The Court cannot conclude that *Monell* liability has been plausibly alleged because it is not clear what particular policy, custom, practice, training, supervision, or discipline (for purposes of this discussion, hereinafter "Policies" or "Policy") is at issue. One possible reading of the relevant paragraphs is that some type of Policy leads to arrests without an investigation of misidentified people and to complaints being made by misidentified people. But the particular Policy is not actually identified. Just listing the terms "policy, custom, practice, training, supervision, and discipline" is not enough. Another possible reading of the relevant paragraphs is that the two subparagraphs give meaning as to which particular Policies are at issue. With respect to subparagraph (1), this could mean that Neylon is attempting to allege that there is a policy, custom, or practice of arresting individuals under a warrant without first investigating identity, or that there is no discipline when such an arrest occurs, or that there is a failure to train officers to investigate identity prior to making an arrest under a warrant. However, that is not precisely how the paragraphs read.[13] The allegations are written in such a way that the subparagraphs are the results of the Policies, they are not the Policies themselves.

In order to properly allege *Monell* liability, a complaint's allegations must be sufficient to identify a particular Policy, how the particular Policy is deficient, how the plaintiff was harmed,

---

[13] Reading the second subparagraph (2) in such a way as to define a particular Policy is highly problematic. All that could be said of subparagraph (2) is that it has something to do with complaints by misidentified individuals. It is unknown whether that means that the complaints are not received, or they are ignored, or they are not properly investigated, or something else.

1   and how the Policy amounts to deliberate indifference.  See Young, 687 F.Supp. 2d at 1149-50.

2   Neylon's Complaint does not sufficiently identify a policy, which makes an assessment of the

3   remaining requirements impractical.  Therefore, Neylon has not alleged plausible *Monell* claims,

4   and dismissal of those claims in the fourth and fifth causes of action is appropriate.  See id.

5         2.    Sheriff Lutze

6       The Court reads the Complaint as attempting to allege two theories against Sheriff Lutze.

7   First, the Complaint appears to allege that Sheriff Lutze implemented an improper policy, custom,

8   or practice.   Supervisory liability can exist if the supervisor implements "a policy so deficient that

9   the policy itself is a repudiation of constitutional rights and is the moving force of the

10   constitutional violation."  Crowley, 734 F.3d at 977; Hansen, 885 F.2d at 646.  However, like the

11   *Monell* claims, the fourth and fifth causes of action do not adequately identify a policy or show

12   how the policy represents a repudiation of constitutional rights.

13       Second, the Complaint appears to allege that Sheriff Lutze's training, supervision, or

14   discipline was improper.  Essentially the same standards that apply to *Monell* claims also apply to

15   § 1983 individual capacity claims against a supervisor for his failure to train, supervise, or

16   discipline his subordinates.  See Flores, 758 F.3d at 1158-59.  Therefore, in order to allege a

17   plausible § 1983 individual capacity claim against a supervisor for a failure to train, supervise, or

18   discipline, a complaint must:  (1) identify what kind of training, supervision, or discipline was

19   lacking or how the existing training, supervision, or discipline was defective; (2) that the

20   supervisor was deliberately indifferent to the need for a particular kind of training, supervision, or

21   discipline; and (3) that the lack of the particular training, supervision, or discipline actually caused

22   the plaintiff's harm.  Cf. id. (holding that the same standard for *Monell* training claims applies to

23   individual capacity claims against a supervisor for a failure to train); Young, 687 F. Supp. 2d at

24   1149-50 (stating what a plaintiff must allege to properly plead a *Monell* claim).

25       Here, the same problems that were found with the *Monell* claims are present with the

26   failure to train, supervise, or discipline claim against Sheriff Lutze.  The Complaint does not allege

27   whether existing training was defective or an absence of a particular type of training, supervision,

28   or discipline, e.g. training regarding investigating identity prior to making an arrest under a

1    warrant or discipline for officers who make arrests under a warrant without investigating identity.

2    Further, there are no factual allegations that demonstrate deliberate indifference.  There are no

3    allegations that show a pattern of constitutional violations, see Connick, 563 U.S.at 62; Flores, 758

4    F.3d at 1159, and without actually identifying the type of training, supervision, and discipline

5    involved, the Court cannot begin to consider whether the deficiency is so obvious that

6    constitutional violations are highly predictable.

7         Given the deficiencies described above, Neylon has not adequately pled any plausible

8    supervisory claims.  See Flores, 758 F.3d at 1158-59; Crowley, 734 F.3d at 977; Young, 687

9    F.Supp.2d at 1149-50.  Dismissal of these claims from the fourth and fifth causes of action is

10   appropriate.  See id.

11

12   **V.**      **Immunity Regarding the Sixth, Seventh, Eighth, and Ninth Causes of Action**

13          *Defendants' Argument*

14          Defendants argue that vicarious liability is not a cause of action and does not allow the

15   torts of employees to be directly asserted against the employer.  While liability may eventually

16   attach under respondeat superior, assertion of the state law claims against the entity defendants is

17   redundant and improper.

18          *Plaintiff's Opposition*

19          Neylon argues that the Complaint alleges every state law violation against the entity

20   defendants on the basis of vicarious liability.  Defendants' argument is incomprehensible because

21   they concede that public entities are vicariously liable for the torts of their employees, but then

22   request dismissal of the vicarious liability claims. Defendants cite no authority for their arguments.

23          *Discussion*

24           "All government tort liability must be based on statute."  Hoff v. Vacaville Unified Sch.

25   Dist., 19 Cal.4th 925, 932 (1998).  Government Code § 815.2 "expressly makes the doctrine of

26   *respondeat superior* applicable to public entities."  Id.  Here, each of Neylon's state law tort

27   causes of action allege *respondeat superior* liability against the entity defendants and cite

28   Government Code §§ 815.2 and 820.  This is proper.  See AE v. County of Tulare, 666 F.3d 631,

1  638 (9th Cir. 2012); <u>Young v. City of Visalia</u>, 687 F.Supp.2d 1155, 1164-65 (E.D. Cal. 2010);

2  <u>Catsouras v. Department of Cal. Highway Patrol</u>, 181 Cal.App.4th 856, 865, 890 (2010).

3       It is not entirely clear what Defendants are attempting to argue.  To the extent that

4  Defendants are attempting to argue that it is improper to name them as defendants in this case

5  before their employees have actually been found liable, the plain language of Government Code

6  § 815.2 does not impose such a requirement and Defendants cite no authority that imposes such a

7  requirement.  Dismissal of the sixth, seventh, eighth, and ninth causes of action on the basis of

8  "immunity" or failure to identify a statute imposing liability is inappropriate.  <u>Cf.</u> <u>Catsouras</u>, 181

9  Cal.App.4th at 863-65, 890 (holding that trial court erred in granting a demurrer that dismissed

10  claims against individual patrol officers and a § 815.2(a) vicarious liability claim against the

11  California Highway Patrol).

12

13  **VI.      Tenth Cause of Action -- Loss of Consortium**

14       *Defendants' Argument*

15       Defendants argue that Neylon's husband, Shawn Neylon, asserts a claim for loss of

16  consortium.  However, this claim is derivative of Neylon's claims, and because those claims all

17  fail, his claims also fail.

18       *Plaintiff's Opposition*

19       Neylon argues that her husband's claims are not derivative of her claims, but they are

20  dependent upon her claims.  Neylon argues that because she has stated claims, her husband's

21  claims cannot be dismissed.

22       *Discussion*

23       Neylon is correct.  Shawn Neylon's claims for loss of consortium are not "derivative" of

24  Neylon's claims, but they are "dependent" upon them.  <u>See</u> <u>Allstate Ins. Co. v. Fibus</u>, 855 F.2d

25  660, 662 (9th Cir. 1988); <u>Viramontes v. Pfizer, Inc.</u>, 2015 U.S. Dist. LEXIS 171695, *27 n.12

26  (E.D. Cal. Dec. 23, 2015).  Therefore, this cause of action is dismissed only to the extent that it is

27  dependent upon Neylon's other claims which have also been dismissed.

28

**VII.   Entity Defendants**

Neylon has brought suit against two entity defendants, Inyo County and the Inyo County Sheriff's Office.  However, the Inyo County Sheriff's Office is a department/sub-unit of Inyo County.  The departments/sub-units of a municipal entity are generally not proper parties in a § 1983 lawsuit.  See Nelson v. County of Sacramento, 926 F.Supp.2d 1159, 1165 (E.D. Cal. 2013); Vance v. County of Santa Clara, 928 F.Supp. 993, 996 (C.D. Cal. 1996).  Because Inyo County is a named defendant, there appears to be no utility in keeping the Inyo County Sheriff's Office.  Therefore, the Court will dismiss the Inyo County Sheriff's Office from this case.[14]  See id.

**VIII.   Leave To Amend**

This is the first dismissal for failure to state claim in this case.  Further, at this time it is not clear that amendment of the dismissed claims would be futile.  Therefore, the dismissals in this case (except for the dismissal of the Inyo County Sheriff's Office) will be with leave to amend. See Mueller, 700 F.3d at 1191; Henry A., 678 F.3d at 1005; Telesaurus, 623 F.3d at 1003. However, with respect to the third cause of action, Defendants contend that Chapman and Neylon were the same height, had a weight difference of 15 lbs., had the same eye color, had the same/similar hair color, had or have used a similar or identical date of birth, have a similar facial appearance, and in the past had used the same three names.  For some of these assertions, Defendants relied on documents that the Court did not consider while ruling on this motion.  If Neylon chooses to amend the third cause of action, she must be cognizant of Defendants' assertions, any evidence that may now be in her possession that supports these assertions, and her obligations and representations under Federal Rule of Civil Procedure 11.

//

//

//

---

[14] This dismissal does not in any way affect Neylon's claims against Inyo County.

1

**ORDER**

2      Accordingly, IT IS HEREBY ORDERED that:

3  1.  Defendant's motion to dismiss the first, sixth, eighth, and ninth causes of action, as well as

4      the tenth cause of action to the extent that is based on the first, sixth, eighth, and ninth

5      causes of action, is DENIED;

6  2   Defendant's motion to dismiss the second, third, fourth, fifth, and seventh causes of action,

7      as well as the tenth cause of action to the extent that it is based on the second, third, fourth,

8      fifth, and seventh causes of action, is GRANTED and those claims are DISMISSED with

9      leave to amend;

10 3.  Defendant Inyo County Sheriff's Office is DISMISSED without leave to amend;[15]

11 4.  Within fourteen (14) days of service of this order, Plaintiff may file an amended complaint

12     that is consistent with the analyses of this order;

13 5.  If Plaintiff does not file an amended complaint, Defendants shall file an answer within

14     twenty-one (21) days of service of this order.

15

16 IT IS SO ORDERED.

17 Dated:   November 18, 2016      _____

18                      SENIOR  DISTRICT  JUDGE

19

20

21

22

23

24

25

26

27

28

---

[15] Again, this dismissal does not affect Plaintiff's claims against Inyo County.