# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA M. NEYLON and SHAWN P. NEYLON, <br><br> Plaintiffs <br><br> v. <br><br> COUNTY OF INYO, WILLIAM R. LUTZE, RALPH DOUGLAS RICHARDS, MICHAEL DURBIN, and DOES 2 to 50, <br><br> Defendants | CASE NO. 1:16-CV-0712 AWI JLT <br><br> ORDER ON DEFENDANTS' MOTION TO DISMISS <br><br> (Doc. No. 35) |

This case stems from the erroneous arrest by Inyo County Sheriff's deputies of Plaintiff Melissa Neylon ("Neylon"), pursuant to an outstanding warrant from Indiana for a Melissa Chapman ("Chapman"). Defendants now move under Rule 12(b)(6) to dismiss the third cause of action in the Second Amended Complaint ("SAC"), which is a 42 U.S.C. § 1983 claim for malicious prosecution against Defendant Ralph Richards. For the reasons that follow, Defendants' motion will be granted.

## LEGAL FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013).

1  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation
2  of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v.
3  Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015).  The Court is "not
4  required to accept as true allegations that contradict exhibits attached to the Complaint or matters
5  properly subject to judicial notice, or allegations that are merely conclusory, unwarranted
6  deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media
7  Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a
8  complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is
9  plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  "A claim has facial
10 plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
11 inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; Somers
12 v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Plausibility" means "more than a sheer
13 possibility," but less than a probability, and facts that are "merely consistent" with liability fall
14 short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.  The Ninth Circuit has
15 distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption
16 of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause
17 of action, but must contain sufficient allegations of underlying facts to give fair notice and to
18 enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as
19 true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing
20 party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc.,
21 765 F.3d 1123, 1135 (9th Cir. 2014).  In assessing a motion to dismiss, courts may consider
22 documents attached to the complaint, documents incorporated by reference in the complaint, or
23 matters of judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If
24 a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request
25 to amend the pleading was made . . . ." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012).
26 However, leave to amend need not be granted if amendment would be futile or the plaintiff has
27 failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d
28 837, 842 (9th Cir. 2016.

# FACTUAL BACKGROUND

From the SAC, Neylon attempted to enter the Inyo County Jail in connection with her employment on December 4, 2015. At the Jail, Neylon was arrested and imprisoned based on an outstanding felony warrant from Indiana for a "Melissa Chapman." Neylon's association with the Indiana warrant was solely based on an alleged hit on one of Neylon's former legal name, after the former legal name appeared on a database. Defendant Ralph Richards ("Richards"), a Sergeant with the Inyo County Sheriff's Office, mistakenly identified Neylon as Chapman. Neylon alleges that the name-matching "hit" did not provide a sufficient basis to arrest her. After Neylon's arrest, Richards received additional identifying information regarding Chapman, but Neylon alleges that the information about Chapman was not conclusive and not sufficiently similar to Neylon. Neylon also supplied Richards with exonerating information, including a denial that Neylon had ever been to Indiana, a denial that she had an ankle tattoo, and an offer to show Richards a tattoo on her back. Richards also "misconstrued" the results of a Live Scan fingerprinting process to indicate a fingerprint match between Neylon and Chapman, when in fact there was no match.

Under the third cause of action, Neylon alleges that Richards recklessly or knowingly interfered with the prosecutor's judgment by omitting relevant and material information and supplying false information that Neylon was Chapman. Richards's actions resulted in the filing of a felony complaint against Neylon that was not supported by probable cause. The complaint was later dismissed. Richards acted with reckless or callous indifference to her Fourth and Fourteenth Amendment rights, or his acts were wantonly and oppressively done.

# DEFENDANTS' MOTION

*Defendant's Argument*

Defendants argue that there are insufficient factual allegations to state a viable claim for malicious prosecution. First, the SAC does not identify the specific constitutional right that Richards intended to deny Neylon, nor does it explain why Richards would want to cause Neylon's prosecution. Second, the SAC appears to allege that Richards was negligent, but a malicious prosecution claim would require that Richards acted with the intent to deny Neylon a

3

1  constitutional right.  Finally, the decision to file a criminal complaint is presumed to result from an
2  independent determination on the part of the prosecutor.  The SAC contains no factual allegations
3  that would rebut this presumption.  Although the SAC alleges that Richards omitted relevant and
4  material information and provided false information, the SAC does not actually identify what
5  information was omitted and what false information was provided.

6  In reply, Defendants contend that intent is integral to a § 1983 malicious prosecution
7  claim.  Reliance on recklessness and negligence are insufficient to state a viable claim.  Because
8  Neylon has filed multiple complaints and still fails to allege a viable claim, the third cause of
9  action should be dismissed without leave to amend.

10  In response to a sur-reply, Defendants argue that Neylon has misconstrued the law and the
11  Ninth Circuit cases that she relies upon.  Malicious prosecution under § 1983 requires intent.

12  *Plaintiff's Opposition*

13  Neylon argues that Richards's arguments are without merit.

14  First, the SAC identifies three constitutional rights that were violated.  On pages 10 and 11,
15  the SAC alleges that Richards deprived Neylon of her Fourth Amendment right to be free from
16  arrest and imprisonment without probable cause.  On pages 4 and 12, the SAC alleges that
17  Richards deprived Neylon of her Fourteenth Amendment right to an adequate investigation where
18  there were significant differences between her and Chapman.  Finally, on pages 6 and 7, the SAC
19  alleges that Richards deprived Neylon of her First and Fourteenth Amendment rights to familial
20  association with her spouse.

21  Second, the Court has already determined that a claim for false arrest has been adequately
22  pled.  Richards did not have probable cause to make an arrest, yet he did so anyway.  Richards was
23  not merely negligent, rather he was actively instrumental in causing the Neylon's prosecution and
24  recklessly disregarded the truth that Neylon was not Chapman.  Richards had no probable cause to
25  arrest or pursue a prosecution in the face of significant differences between Neylon and Chapman,
26  exonerating information that confirmed Neylon was not Chapman (e.g. Neylon denying that she
27  had ever been to Indiana, denying that she had an ankle tattoo, and offering to show Richards her
28  back tattoo), and a Live Scan fingerprint result that showed Neylon was not Chapman.

Third, the motion's characterization of the SAC as only alleging that Richards merely stated Neylon was Chapman is inaccurate. The SAC alleges that Richards said that Neylon was Chapman, and this is not a generic fact. Richards disregarded significant differences between Neylon and Chapman, disregarded exonerating information, and disregarded a Live Scan fingerprint result that Neylon's prints did not match Chapman's.

In a sur-reply, Neylon argues that intent to deprive a person of a constitutional right is not a necessary element to a § 1983 malicious prosecution claim. Under *Poppel v. City of San Diego*, 149 F.3d 951 (9th Cir. 1998), a malicious prosecution claim may be stated by a knowledge of or a deliberate indifference to the constitutional right at issue. Consistent with *Poppel*, the SAC alleges Richards acted with reckless or callous indifference to Neylon's Fourth and Fourteenth Amendment rights.

*Legal Standard*

In general, a claim of malicious prosecution is not cognizable under § 1983 "if process is available within the state judicial systems" to provide a remedy, although "[the Ninth Circuit has] also held that an exception exists . . . when a malicious prosecution is conducted with the intent to . . . subject a person to a denial of constitutional rights." Lacey v. Maricopa County, 693 F.3d 896, 919 (9th Cir. 2012); Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc); Cline v. Brusset, 661 F.2d 108, 112 (9th Cir. 1981). To maintain a § 1983 claim for malicious prosecution, a plaintiff must allege "that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." Lacey, 693 F.3d at 919; Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004); see also Usher v. City of Los Angeles, 828 F.2d 556, 562 (9th Cir. 1987). Further, a plaintiff must show that the prior prosecution terminated in a manner that indicates innocence, i.e. a favorable termination. Lacey, 693 F.3d at 919; Awabdy, 368 F.3d at 1066-68; see also Usher, 828 F.2d at 562. Claims of malicious prosecution may be brought against police officers or others who wrongfully caused the prosecution to occur. Smith v. Almada, 640 F.3d 931, 938 (9th Cir. 2011); Awabdy, 368 F.3d 1062, 1066.

*Discussion*[1]

1. Constitutional Right

Richards contends that the SAC does not identify a specific constitutional right that he intended to violate. A review of the SAC shows that the Fourth and Fourteenth Amendments are expressly identified under the third cause of action. See SAC at ¶ 64.

With respect to the Fourth Amendment, the SAC alleges a separate claim for false arrest. See SAC at ¶¶ 51-55. A malicious prosecution claim can be based on the rights secured by the Fourth Amendment. E.g. Yousefian v. City of Glendale, 779 F.3d 1010, 1015 (9th Cir. 2015); Abudiab v. Georgopoulos, 586 Fed. Appx. 685 (9th Cir. 2013); Cabrera v. City of Huntington Park, 159 F.3d 374, 381-82 (9th Cir. 1998); Santana v. City of Yuba, 11102139-*40, *11-*12 (D. Ariz. Aug. 18, 2016). It is reasonable to read the third cause of action as identifying the Fourth Amendment right to be free from unreasonable seizures.

As to the Fourteenth Amendment, Neylon's opposition indicates that the third cause of action invokes the Fourteenth Amendment right to familial association and the right to "an adequate investigation." See Doc. No. 37 at 4:23-5:10. It is true that the Fourteenth Amendment protects both the right to familial association, including the relationships between parents, children and spouses, see Morales v. City of Delano, 852 F.Supp.2d 1253, 1273-74 (E.D. Cal. 2012), and a right against incarceration due to mistaken identity, which may require law enforcement to conduct a further investigation. See Garcia v. County of Riverside, 817 F.3d 635, 640 (9th Cir. 2016). However, these particular rights are not fairly identified under the third cause of action.

When compared to the allegations in the first cause of action, it is entirely reasonable to conclude that no separate Fourteenth Amendment based claim is included under the third cause of

---

[1] Neylon argues that the motion to dismiss is brought by Inyo County, Sheriff Lutze, and Richards, but only Richards has standing to bring the motion. It is true that courts have held that defendants who are not named under a particular cause of action lack standing to seek dismissal of, or summary judgment on, that cause of action. See Walker v. Three Angels Broad. Network, Inc., 2012 U.S. Dist. LEXIS 131891, *8 (S.D. Ill. Sept. 17, 2012); Norfolk Fed'n of Bus. Dist. v. Dep't of H.U.D., 932 F.Supp. 730, 741-42 (E.D. Va. 1992). Further, the third cause of action is brought against Richards and Doe Defendants, it is not brought against Sheriff Lutze or Inyo County. See SAC ¶ 61. Thus, Neylon's argument is correct. However, the point is an immaterial technicality. Richards is a named party of the motion to dismiss, he is represented by the same attorney who represents Inyo County and Sheriff Lutze, and the arguments made in the motion to dismiss are not separately divided between Richards, Sheriff Lutze, and Inyo County, i.e. all three make one unified argument. Accordingly, the inclusion of Sheriff Lutze and Inyo County on the motion to dismiss is harmless and does not change the results or analysis of the motion.

action.  Like the third cause of action, the first cause of action in relevant part lists the Fourth and Fourteenth Amendment in the same paragraph and without elaboration.  Cf. SAC ¶ 54 with SAC ¶ 64.  In the order on Defendants' prior motion to dismiss, the Court held that Neylon's reference to both the Fourth Amendment and Fourteenth Amendment under her false arrest claim was proper because the Fourth Amendment is applicable to the states through the Fourteenth Amendment, and courts have held that listing both amendments is an acceptable pleading practice despite the confusion that often results.  See Neylon v. County of Inyo, 2016 U.S. Dist. LEXIS 161326, *22 (E.D. Cal. Nov. 18, 2016).  Given the Court's prior ruling and the similarities between Paragraphs 54 and 64, the only fair reading of Paragraph 64 is that the Fourteenth Amendment is again being used as a conduit for Fourth Amendment protections.  See id.  If Neylon insists on listing the Fourteenth Amendment alongside other constitutional amendments, the Court will only view such allegations as referencing the Fourteenth Amendment as a conduit.  If Neylon intends to invoke a right that is protected by the Fourteenth Amendment itself, as opposed to merely acting as a conduit, then it is incumbent upon Neylon to expressly identify the particular Fourteenth Amendment right at issue and support it with factual allegations.  Because the Fourteenth Amendment right to familial association and right against mistaken incarceration are not expressly alleged or fairly invoked under the third cause of action, these rights are not part of that claim.

Finally, Neylon's opposition indicates that she is invoking a First Amendment right to familial association.  See Doc. No. 37 at 5:1-10.  However, the First Amendment is nowhere listed under the third cause of action.  Indeed the First Amendment is not identified anywhere within the SAC.  If Neylon wishes to bring a claim based on First Amendment rights, she must expressly identify the First Amendment right and support the claim with factual allegations.  Otherwise, there is no claim based on the First Amendment in the SAC.

    2.    Prosecutorial Independence

Richards contends that dismissal is required because there are no allegations that would overcome the presumption of prosecutorial independence, including identifying what false or misleading information was provided to the prosecutors.  The Court is not persuaded.

Generally "the decision to file a criminal complaint is presumed to result from an

1 independent determination on the part of the prosecutor, and thus, precludes liability for those who
2 participated in the investigation or filed a report that resulted in the initiation of proceedings."[2]
3 Awabdy, 368 F.3d at 1067 (citing Smiddy v. Varney, 665 F.2d 261, 266-68 (9th Cir. 1981)).
4 However, "the presumption of independent prosecutorial judgment in the charging decision is an
5 evidentiary presumption applicable at the summary judgment stage to direct the order of proof; it
6 is not a pleading requirement to be applied to a motion to dismiss, before discovery has taken
7 place . . . ." Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002); see
8 Williams v. County of Alameda, 26 F.Supp.3d 925, 945 (N.D. Cal. 2014); Lauter v. Anoufrieva,
9 642 F. Supp. 2d 1060, 1085 n.33 (C.D. Cal. 2008); see also Mazzetti v. Bellino, 57 F.Supp.3d
10 1262, 1269-71 (E.D. Cal. 2014). Thus, contrary to Richards's argument, Neylon is not obligated
11 at this stage to rebut the presumption of prosecutorial discretion/independence (or to identify any
12 false information) in order to properly allege a claim for malicious prosecution. See id.

       3.      Intent

Neylon relies primarily on *Poppel* to argue that she does not need to allege that Richards intended to deprive her of a constitutional right. In *Poppel*, the Ninth Circuit acknowledged a prior case (*Usher*) that held a malicious prosecution claim under § 1983 will lie if the defendant acted "with the *intent* to deprive a person" of a constitutional right. Poppel, 149 F.3d at 961 (emphasis added). In the process of reversing the district court, the Ninth Circuit then addressed an argument that the defendant "acted with malice and with a *purpose* to deprive [plaintiff] of specified constitutional rights." Id. at 962 (emphasis added). The Ninth Circuit stated that the "'purpose' element of this [malicious prosecution] claim presupposes a knowledge of or a deliberate indifference to the rights at issue." Id. From this passage, Neylon contends that *Poppel* holds that a malicious prosecution claim can be based on a defendant's knowledge of a plaintiff's constitutional right, a defendant's deliberate indifference to a plaintiff's constitutional right, or a defendant's intent to violate a plaintiff's constitutional right.

---

[2] "[T]he presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." Awabdy, 368 F.3d at 1067.

After consideration, the Court cannot agree with Neylon.  *Poppel* was not creating additional *mens reas* that were alone sufficient to establish "purpose."  *Poppel* never held that "knowledge of the right" or "deliberate indifference to the right" were sufficient themselves to satisfy the "purpose element."  Instead, *Poppel* indicated that the intent/purpose to violate a constitutional right entails knowledge and deliberate indifference, but that intent to violate a constitutional right remains the requirement for a § 1983 malicious prosecution claim.

The Court reaches this conclusion based on the meaning of several key words.  First, "intent" and "purpose" are synonyms.  See https://www.merriam-webster.com/dictionary/intent.[3]  "Purpose" can mean "the reason for which something exists or is done, made, used, etc." or "an intended or desired result; end; aim; goal."  See www.dictionary.com/browese/purpose?s=t.  Similarly, in law, "intent" is generally understood as meaning "having a conscious objective."  E.g. Alaska Stat. § 11.81.900(a)(1); New York Pen. Code § 15.05; Texas Pen. Code § 6.03(a); Restat.3d of Torts: Liability for Physical and Emotional Harm, § 1(a).  Second, "presuppose" means "to suppose or assume beforehand; take for granted in advance" or "to require or imply as an antecedent condition."  See www.dictionary.com/browese/pressuppose?s=t.  Stated differently, "presuppose" means "to require or depend on (something) in order to be true or exist."  See https://www.merriam-webster.com/dictionary/presuppose.  Finally, "deliberate indifference" is often compared to "recklessness" and generally refers to a "conscious disregard" by the actor. Fargo v. San Juan Bautista, 857 F.2d 638, 642 n.7 (9th Cir. 1988); cf. Connick v. Thompson, 563 U.S. 51, 61 (2011) (in the context of § 1983 municipal liability, noting that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."); Farmer v. Brennan, 511 U.S. 825, 837 (1994) (in the context of an Eighth Amendment conditions of confinement claim, holding that a prison official is "deliberately indifferent" if he "knows of and disregards an excessive risk to inmate health or safety.").

With these definitions in mind, *Poppel*'s statement addressed "knowledge" and "deliberate indifference."  As to "knowledge," *Poppel* did not state that "knowledge" alone would meet the

---

[3] All websites referenced were visited on February 15, 2017.

9

"purpose element." Rather, *Poppel* stated that the purpose element presupposes, i.e. assumes or requires, "knowledge of . . . the rights at issue." The natural meaning of this phrase is that a defendant must have actual knowledge or actually be aware of the constitutional right in order to have the intent/purpose to violate that right. If one does not know that a constitutional right exists, then one's "conscious objective" or "goal" cannot be the violation of that constitutional right. As to "deliberate indifference," *Poppel* did not state that "deliberate indifference" alone would meet the purpose element. Instead, *Poppel* stated that the purpose element presupposes, i.e. assumes or requires, "deliberate indifference to the rights at issue." The Court believes that the Ninth Circuit means that if a defendant acts with the intent to violate a plaintiff's constitutional right, then in one sense the defendant will also be acting in conscious disregard for the plaintiff's right. That is, the defendant is not stopped by or does not care about the existence or protections of that right, and is disregarding the right because his "conscious objective" or "goal" is to actually violate the right. However, the inverse is not true. Just because a defendant consciously disregards a right does not also mean that the defendant had the conscious objective or goal of actually violating the right. The intent or conscious objective may have nothing to do with a constitutional right, even though a risk to the right is disregarded in the process of achieving the objective. Therefore, while the "purpose" element would include and assume knowledge of the constitutional right or deliberate indifference to it, either knowledge of or deliberate indifference to the right alone would not show the intent to violate the right.

   The Court finds it significant that Neylon has not identified any cases that have interpreted *Poppel* as approving additional *mens reas*. *Poppel* has been cited only one other time by the Ninth Circuit in a published malicious prosecution opinion. In *Awabdy*, the Ninth Circuit cited *Poppel* as an example of the court continuing to follow precedent that requires "the intent to deprive a person of [a constitutional right]." Awabdy, 368 F.3d at 1069. *Awabdy* did not hold that knowledge or deliberate indifference would be sufficient to meet the "purpose element," and it did not cite *Poppel* for such a proposition. Given that nearly twenty years have passed since *Poppel* was decided, that no Ninth Circuit case has interpreted *Poppel* consistent with Neylon's interpretation is telling.

10

Further, in 1981, the Ninth Circuit held that malicious prosecution is generally not cognizable under § 1983 unless the prosecution was "conducted with the *intent* of denying a person equal protection or which otherwise subject a person to a denial of constitutional rights." Cline, 661 F.2d at 112. *Cline*'s holding was confirmed by the Ninth Circuit en banc four years later in *Bretz*. Bretz, 773 F.2d at 1031. In subsequent cases, the Ninth Circuit cited both *Bretz* and *Cline* in holding that a malicious prosecution claim was available under § 1983 if the prosecution was conducted with the "intent" of denying the plaintiff a constitutional right. See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988); Usher, 828 F.2d at 562; McCarthy v. Mayo, 827 F.2d 1310, 1315 (9th Cir. 1987); Johnson v. Barker, 799 F.2d 1396, 1400 (9th Cir. 1986). In 1995, the Ninth Circuit changed its description of malicious prosecution. In *Freeman*, the Ninth Circuit explained that a § 1983 plaintiff "must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995). In formulating this description of malicious prosecution, *Freeman* cited only *Bretz* and *Cline*. After *Freeman*, the Ninth Circuit has described § 1983 malicious prosecution in terms of an "intent to violate a constitutional right" or a "purpose to violate a constitutional right." E.g. Yagman v. Garcetti, --- F.3d ---, 2017 U.S. App. LEXIS 1030, *14 (9th Cir. 2016) (citing "purpose to violate" formulation); Lacey, 693 F.3d at 919 (citing *Freeman* and *Bretz* and using both formulations); Smith, 640 F.3d at 938; (using "purpose to violate" formulation); Lassiter v. City of Bremerton, 556 F.3d 1049, 1054 (9th Cir. 2009) (using "purpose to violate" formulation); Awabdy, 368 F.3d at 1066, 1069 (citing *Freeman* and *Poppel* and using both formulations). However, only *Poppel* has discussed knowledge or deliberate indifference. Given this history, it is apparent that the Ninth Circuit uses "intent" and "purpose" interchangeably, and intent/purpose does not equal either knowledge or deliberate indifference.

Finally, the Court is not persuaded by the four additional cases cited by Neylon. Neylon cites *Smiddy v. Varney*, 665 F.2d 261, 267 (9th Cir. 1981) for the proposition that "reckless disregard for the rights of an arrested person" is a sufficient *mens rea*. However, *Smiddy* did not set the elements of a malicious prosecution case. The cited portion of *Smiddy* was part of the

11

1  sentence that established the presumption of independent prosecutorial judgment that shields a
2  person from liability for damages incurred after a prosecutor files criminal charges.  See id.  *Cline*,
3  decided after *Smiddy*, began establishing the elements of a malicious prosecution claim, and *Cline*
4  requires intent.  See Cline, 661 F.2d at 112.  *Cline*, not *Smiddy*, was approved by the Ninth Circuit
5  en banc in *Bretz*, and both *Cline* and *Bretz* (which remains controlling) requires intent.[4]  See Bretz,
6  722 F.2d 505 (en banc).  Neylon also cites *Galbraith v. County of Santa Clara*, 307 F.3d 1119,
7  1127 (9th Cir. 2002) for the proposition that "recklessly disregarding the truth" is a sufficient
8  *mens rea*.  However, *Galbraith* was applying/expanding the law concerning an officer's liability
9  under § 1983 for submitting false and material information in a warrant application, to § 1983
10 liability for a coroner who includes false information in an autopsy report and the report plays a
11 material role in an arrest and prosecution.  See id. at 1126-27.  *Galbraith* was assessing potential
12 liability and constitutional violations based on the contents of a coroner's report, it was not setting
13 the intent/purpose element of a malicious prosecution claim.[5]  See id.  Neylon also cites *Smith v.*
14 *Almada*, 640 F.3d 931, 938 (9th Cir. 2011) for the proposition that "wrongfully causing
15 prosecution" is sufficient.  However, the cited portion of *Smith* is part of a sentence that indicates
16 which actors, e.g. police officers and investigators, may be sued for malicious prosecution.
17 Importantly, the next sentence in *Smith* cites to *Freeman* and states that a § 1983 malicious
18 prosecution plaintiff must allege malice, no probable cause, and "the purpose of denying her a
19 specific constitutional right."  Id.  The cited portion of *Smith* does not set the elements of a
20 malicious prosecution claim.  Finally, Neylon cites *Ayala v. KC Environmental Health*, 426
21 F.Supp.2d 1070, 1099 (E.D. Cal. 2006) for the proposition that being "actively instrumental in
22 causing the prosecution" is sufficient for a malicious prosecution claim.  The cited portion of
23 *Ayala* is either a quotation from a treatise on California law that describes the state law tort of
24 malicious prosecution, or a quotation from *Awabdy* that deals with a defendant "engag[ing] in
25 wrongful or bad faith conduct that was actively instrumental in causing the initiations of legal

---

[4] The Court is unaware of any Ninth Circuit malicious prosecution case in which *Smiddy* is cited as establishing the elements of such a claim.

[5] The Court is unaware of any Ninth Circuit malicious prosecution case in which *Galbraith* is cited for establishing the elements of such a claim.

proceedings." Id. In either event, the cited portion of *Ayala* does not purport to set the elements of a § 1983 malicious prosecution, nor does it address the intent/purpose element of such a claim, rather it either describes California tort law or how to rebut the presumption of prosecutorial independence. Therefore, *Smith*, *Galbraith*, *Smiddy*, and *Ayala* do not aid Neylon.

In sum, a § 1983 malicious prosecution plaintiff must allege that the defendant acted with the intent to violate a particular constitutional right. See Lacey, 693 F.3d at 919; Bretz, 773 F.2d at 1031; Cline, 661 F.2d at 112. Because the SAC does not allege that Richards had the intent or purpose of violating Neylon's constitutional rights, no malicious prosecution claim is stated and dismissal of the third cause of action is appropriate.

### 4. Leave To Amend

Neylon has amended her complaint two times. However, this is the first time that the third cause of action has been in issue, and thus, this is the first time that the Court has found that Neylon did not state a viable claim. Because this is the first dismissal of the § 1983 malicious prosecution claim, and because it is not clear that amendment would be futile, the Court will dismiss the third cause of action with leave to amend. See Garmon, 828 F.3d at 842.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 35) is GRANTED and the third cause of action is DISMISSED with leave to amend;
2. Within fourteen (14) days of service of this order, Plaintiff may file an amended complaint that is consistent with the analysis of this order; and
3. If Plaintiff does not file an amended complaint, Defendants shall file an answer within twenty-one days of service of this order.

IT IS SO ORDERED.

Dated: March 14, 2017

SENIOR DISTRICT JUDGE