# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA M. NEYLON, et al., | Case No.: 1:16-cv-00712 - AWI - JLT |
| Plaintiffs, | ORDER GRANTING PLAINTIFF'S MOTION TO AMEND THE CASE SCHEDULE AND TO ALLOW THE FILING OF A FOURTH AMENDED COMPLAINT |
| v. | |
| COUNTY OF INYO, et al., | (Doc. 46) |
| Defendants. | |

Melissa Neylon asserts Defendants are liable for violations of federal and state law for a wrongful arrest and incarceration. (*See generally* Doc. 45) Plaintiff seeks leave to file a Fourth Amended complaint to include a claim for ratification of wrongful acts, reporting that evidence supporting ratification was produced in the course of discovery. (Doc. 46) Defendants oppose the motion to amend, arguing Plaintiff fails to demonstrate good cause or diligence in seeking leave to amend. (Doc. 50)

Because the Court finds leave to amend is appropriate under Rules 15 and 16 of the Federal Rules of Civil Procedure, as discussed below, Plaintiff's motion to amend is **GRANTED**.

## I.     Background

Plaintiff alleges that on December 4, 2015, she "was lawfully at the Inyo County Jail for the purpose of her employment," when she was arrested by Defendants Ralph Richards and Michael Durbin. (Doc. 45 at 3, ¶ 13) Plaintiff contends Richards and Durbin "mistakenly identified" Plaintiff

1

"as the subject of [an] Indiana warrant, Melissa Chapman, who had allegedly used an alias which was similar" to Plaintiff's former name. (*Id.*, ¶ 15) Plaintiff asserts that her "association with the Indiana warrant was based solely on an alleged 'hit' on one of her former legal married names, after it was run through a database." (*Id.*, ¶ 16) She alleges that "[t]he name-matching 'hit' did not provide a sufficient basis" for her arrest and imprisonment. (*Id.*)

According to Plaintiff, after she was arrested and imprisoned, Richards and Dubrin "received information about the height, weight, hair, eye color, race, and date of birth of the subject of the Indiana warrant." (Doc. 45 at 3-4, ¶ 17) Plaintiff contends these details "were not conclusive or sufficiently similar… to provide probable cause to believe that Plaintiff Melissa M. Neylon was Melissa Chapman, the subject of the Indiana warrant." (*Id.* at 4, ¶ 18) Rather, Plaintiff contends "significant differences" were shown between her and Ms. Chapman, stating:

> For instance, Plaintiff MELISSA M. NEYLON's and Melissa Chapman's dates of birth differed by day, month, and year. Plaintiff MELISSA M. NEYLON's and Melissa Chapman's social security numbers were dissimilar. Plaintiff MELISSA M. NEYLON's and Melissa Chapman's physical appearance was dissimilar, including a 15-pound weight difference, different hair-color (blonde vs. brown), hair type (wavy vs. straight), different face, eye, and mouthshape, and different racial identity, where Melissa Chapman was identified as "White" and Plaintiff MELISSA M. NEYLON, who is dark-skinned, identified as "Pacific Islander," including Guamanian, Filipino, and White.

(*Id.*, ¶ 19) Further, Plaintiff alleges that Richards learned that Ms. Chapman "had a tattoo on her right ankle," and asked Plaintiff whether she had any tattoos on her legs, which Plaintiff did not. (*Id.*, ¶ 20)

Plaintiff reports that "following her arrest," she was also "subject to a 'Live Scan' fingerprinting process." (Doc. 45 at 4, ¶ 21) She contends Richards "misconstrued the results… to indicate a fingerprint match." (*Id.*) Plaintiff alleges that if Richards and other "Doe" officers "had competently conducted the Live Scan fingerprinting process, they would have recognized that the results had not matched Plaintiff MELISSA M. NEYLON's and Melissa Chapman's fingerprints but, rather, Plaintiff MELISSA M. NEYLON's fingerprints had been matched with an earlier exemplar of her own fingerprints which she had previously supplied." (*Id.* at 5, ¶ 22)

She alleges that on December 18, 2015, Richards "falsely testified" that there was a fingerprint match between Plaintiff and Melissa Chapman at an identify hearing before the Superior Court of California, County of Inyo. (Doc. 45 at 5, ¶ 26) Plaintiff asserts that based upon Richard's testimony,

2

the court determined probable cause established that she was Melissa Chapman. (*Id.* at 6, ¶ 28) Plaintiff was released from custody "after posting bond on bail set at $50,000." (*Id.*, ¶ 26)

On December 22, 2016, the Dearborn County Sheriff's Office in Indiana notified the Inyo County District Attorney's Office that "its evidence technician and a 'latent examiner'" compared the fingerprints and confirmed "the prints came from two separate individuals." (Doc. 45 at 6, ¶30) Plaintiff reports that the same day, the Inyo County District Attorney's Office dismissed the felony compliant it had filed against Plaintiff. (*Id.*, ¶ 31)

On April 14, 2016, Plaintiff and her husband Shawn Neylon "sent a 'Citizen Complaint & Investigation Request'" to Defendant William Lutze, the Sheriff of Inyo County, complaining of Plaintiff's arrest and incarceration. (Doc. 45, ¶¶ 8, 36) Plaintiff asserts that in response, on April 20, 2016, "Undersheriff Jeff Hollowell acknowledged that his investigation of the incident was 'getting cloudy' and that he 'may have been misled on the printing information.'" (*Id.* at 6, ¶ 37) Plaintiff contends that on June 9, 2016, Undersheriff Holowell informed the Neylons' legal counsel the investigation into the Citizen Complaint was complete, stating:

> The Inyo County Sheriff's Office concluded its investigation into the allegations made by you against one or more of our employees. Current law prohibits me from disclosing the outcome of the investigation. I want to assure you, the matter was dealt with. Per your request, I have attached copies from our Policies and Procedures Manual related to Citizens Complaints.
>
> Your complaint alleged four different allegations.[1] Three of the allegations were unfounded and one was exonerated.

(*Id.*, ¶ 39)

Plaintiff alleges that Sheriff Lutze "is, and at all relevant times was, a policy-making authority" for Inyo County and the Sheriff's Office. (Doc. 45 at 8, ¶ 40) According to Plaintiff, Sheriff Lutze "knew, or should have known," there were "inadequate policies, customs, and/or practice;" and employees under his command, including Richards and Durbin, "were inadequately trained, supervised, or disciplined resulting from their inadequate polices, customs, or practices." (*Id.*, ¶ 42) Plaintiff contends Sheriff Lutze, Inyo County, and the Sheriff's Office "maintained policies, customs, or

---

[1] Ms. Neylon does not detail the four allegations she made in her citizen's complaint except to indicate they related to her "arrest and incarceration." (Doc. 46-2 at 10)

3

practices deliberately indifferent or acquiescing to, or failed to maintain policies, customs, or practices when it was obvious that they were needed to prevent the arrest and imprisonment of persons misidentified as the subject of an arrest warrant." (*Id.*, ¶ 43) In addition, Plaintiff asserts that the "acquiescence in or deliberate indifference to the maintenance of such inadequate policies, customs, and/or practices and training, supervisor, and/or discipline contributed to and was a moving force behind … [the] misidentification of Plaintiff." (*Id.*, ¶ 50)

Based upon the foregoing facts, Plaintiff Melissa Neylon raised the following causes of action in her Third Amended Complaint: (1) false arrest/imprisonment in violation of the Fourth and Fourteenth Amendments, against Richards and Dubrin; (2) inadequate investigation in violation of the Fourteenth Amendment, against Lutz and Richards; (3) malicious prosecution against Richards; (4) inadequate policies, customs, or practices in violation of the Fourteenth Amendment, against Inyo County and Sheriff Lutze; (5) false arrest/imprisonment in violation of California law; (6) intentional infliction of emotional distress; and (7) negligence. (*See* Doc. 45 at 10-16) In addition, Plaintiff Shawn Neylon raises a claim for loss of consortium. (*Id.* at 16-17)

Plaintiff now seeks leave to file a Fourth Amended Complaint, to add a "ratification" claim. (Doc. 46-1 at 6-7) In part, the proposed fourth amended complaint reads,

> Defendants COUNTY OF INYO, WILLIAM R. LUTZE and DOES 26 to 50 and INYO COUNTY SHERIFF'S DEPARTMENT, **acting under color of state law and as authorized policymakers,** ratified and approved of Defendants RALPH DOUGLAS RICHARDS, MICHAEL DURBIN, and DOES 2 to 25's decision and the basis for falsely arresting and imprisoning Plaintiff MELISSA M. NEYLON, without probable cause, by conducting an internal affairs division investigation of Plaintiff MELISSA M. NEYLON's false arrest and imprisonment only after receiving a citizen's complaint, by upholding the INYO COUNTY SHERIFF'S DEPARTMENT's Internal Affairs Division's conclusion that Plaintiff MELISSA M. NEYLON's citizen's complaint concerning her false arrest and imprisonment was "unfounded" and "exonerated," by concluding that Defendant RALPH DOUGLAS RICHARDS' actions were "in compliance" with INYO COUNTY SHERIFF'S DEPARTMENT's policies, by concluding that Plaintiff MELISSA M. NEYLON's arrest and imprisonment was supported by probable cause when, in fact, it was not, and/or by failing to take any remedial action following Plaintiff MELISSA M. NEYLON's false arrest and imprisonment, including failure to discipline or admonish Defendant RALPH DOUGLAS RICHARDS and failure to enact new policies or amend existing policies that would prevent false arrest and imprisonment in the future.

(Doc. 46-2 at 7, emphasis added)

Plaintiff contends there is good cause for amendment after the pleading amendment deadline

because "she only obtained the information necessary to support the requested amendment through discovery and after the deadline to amend pleadings set out in the Court's Scheduling Order." (*Id.* at 8) Defendants filed their opposition to the motion on April 17, 2017 (Doc. 50), to which Plaintiff filed a reply on April 19, 2017 (Doc. 51).

**II.     Legal Standards**

    **A.     Scheduling Orders**

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." *Id.* Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding

her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

### B. Pleading Amendments

Under Fed. R. Civ. P. 15(a), a party may amend a pleading once as a matter of course within 21 days of service, or if the pleading is one to which a response is required, 21 days after service of a motion under Rule 12(b), (e), or (f). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Because Defendant does not consent to the filing an amended complaint, Plaintiff seeks the leave of the Court.

Granting or denying leave to amend a complaint is in the discretion of the Court, *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996), though leave should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Consequently, the policy to grant leave to amend is applied with extreme liberality. *Id.*

There is no abuse of discretion "in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990). After a defendant files an answer, leave to amend should not be granted where "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (citing *Yakama Indian Nation v. Washington Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999)).

### III. Discussion and Analysis

As an initial matter, the Scheduling Order in this action set forth a pleading amendment deadline of March 13, 2017, whether by stipulation or a written motion. (Doc. 28 at 3) The motion now pending before the Court was not filed until March 31, 2017. (Doc. 46) Thus, Plaintiff is required to demonstrate good cause under Rule 16 for filing an amended pleading out-of-time. *See Coleman v.*

*Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (explaining the question of whether the liberal amendment standard of Rule 15(a) or the good cause standard of Rule 16(b) apples to a motion for leave to amend a complaint depends on whether a deadline set in a Rule 16(b) scheduling order has expired). Accordingly, the Court examines Plaintiff's diligence to determine whether amendment of the Scheduling Order is proper.

### A. Plaintiff's Diligence

Plaintiff contends that "[s]ince discovery opened in this matter, [she] has been diligently pursuing discovery related to a potential 'ratification' claim." (Doc. 46-1 at 7) Indeed, in the Joint Scheduling Report filed by the parties on December 12, 2016, Plaintiff reported: "depending on discovery obtained in relation to Inyo County Sheriff's Office's investigation and disposition of Plaintiffs' citizen's complaint, filed in relation to the actions giving rise to this matter, Plaintiffs anticipate amending the Complaint to add claims against Defendants responsible for ratification of Defendants' actions or inactions and/or inadequate or sham investigation…" (Doc. 24 at 2) She now reports that she "sought and, after substantial resistance, obtained the Inyo County Sheriff's Office's Internal Affairs Division's investigation and findings related to Plaintiff's arrest and imprisonment giving rise to this action." (Doc. 46-1 at 7) In addition, Plaintiff "sought documents related to any remedial actions Defendant County of Inyo has taken following Plaintiff's arrest and Imprisonment" as well as "admissions related to whether Defendants approve of Plaintiff's arrest and imprisonment, including the basis for it, and whether the arrest and imprisonment complied with Defendant County of Inyo's policies." (*Id.*) Plaintiffs' counsel, Mark Merin, reports that the discovery responses were received after March 13, 2017. (Doc. 46-2 at 2, Merin Decl. ¶ 4)

On the other hand, Defendants contend that because the "case has been ongoing for approximately eleven months[,] Plaintiffs have had ample time to conduct discovery related to purported ratification." (Doc. 50 at 3) Defendants assert that Plaintiffs "were aware of the ratification theory and the Court ordered deadline to request amendment," and failed to diligently seek leave to amend the pleadings. (*Id.* at 4) According to Defendants, "As Plaintiffs' request [to amend] is beyond the time limit allowed in the Scheduling Order, Plaintiffs' request must be denied." (*Id.*)

Notably, though the matter was filed eleven months ago, on May 20, 2016, the action was not in

a posture for discovery to begin for several months. Indeed, Defendants sought an extension of time to respond to the complaint, and were not required to respond until August 1, 2016. (Docs. 10, 11) At that time, Defendants filed a motion to dismiss. (Doc. 12) The next day, the Court issued a minute order continuing the scheduling conference with the parties "[i]n light of the pending motion to dismiss." (Doc. 14) After the Court ruled on the motion to dismiss on November 21, 2016 (Doc. 22), Plaintiffs filed the First Amended Complaint on December 5, 2016 (Doc. 23). As a result, the matter was not scheduled for seven months, and the parties were able to begin discovery only four months ago. *See Morgan Hill Concerned Parents Assoc. v. Cal. Dep't of Education*, 2016 U.S. Dist. LEXIS 26549 at *3 (E.D. Cal. Mar. 1, 2016) ("Once a case has a schedule, the parties usually are able to begin "discovery" — a structured process governed by federal and local rules…").

Despite this, Plaintiffs began discovery prior to the scheduling conference by propounding a Request for Production of Documents. On December 12, 2016, Plaintiffs filed a motion to compel discovery, stating:

> Plaintiff Melissa M. Neylon does and will move the Court for an order compelling further responses and documents from Defendant County of Inyo's responses and/or objections to Plaintiff Melissa M. Neylon's Requests for Production of Documents, Set One—and, in particular, (1) the documents identified as "IA Investigation regarding the allegations set forth in Plaintiffs' Complaint," dated May 26, 2016 (Bates # DEF 0015-0017); (2) the documents identified as Defendant Ralph Douglas Richards' "Personnel File" (Bates # DEF 0105-0216); and (3) the documents identified as "IA Investigation into an entirely related matter; does not involve false arrest, inadequate investigation, excessive force, misidentification or claims of misrepresentation," dated November 20, 2013 (Bates # DEF 0516-0579).

(Doc. 25 at 2) Although the discovery dispute was resolved without Court intervention, this demonstrates Plaintiff was seeking discovery to support her ratification claim that is now present in her proposed Fourth Amended Complaint, and received that evidence after the expiration of the period for amending the pleading.

The production of evidence including new information after a pleading amendment deadline may constitute good cause to modify the scheduling order. *See Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 3733815, at *5 (E.D. Cal. Dec. 15, 2006) ("Allowing parties to amend based on information learned through discovery is common and well established" under Rule 16). Here, after receiving the discovery responses, Plaintiff notified Defendant of the intent to amend the complaint

8

only days later (Doc. 46-2 at 25), and filed the motion now pending before the Court. Because Plaintiff both pursued the discovery without delay and did not delay in seeking leave to amend after receiving the discovery, the Court finds Plaintiff acted with diligence and the good cause requirement of Rule 16 is satisfied.

### B. Leave to Amend under Rule 15

Because the Court concludes Plaintiff demonstrated diligence, the Court must also determine whether amendment of the pleading is proper under Rule 15. Evaluating a motion to amend, the Court may consider (1) whether the party has previously amended the pleading, (2) undue delay, (3) bad faith, (4) futility of amendment, and (5) prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Loehr v. Ventura County Comm. College Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984). These factors are not of equal weight, because prejudice to the opposing party has long been held to be the most critical factor to determine whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

#### 1. Prior amendments

The Court's discretion to deny an amendment is "particularly broad" where a party has previously amended the pleading. *Allen*, 911 F.2d at 373. Here, Plaintiffs have previously amended the complaint, and now seek leave to file a Fourth Amended Complaint. Therefore, this factor weighs against amendment.

#### 2. Undue delay

By itself, undue delay is insufficient to prevent the Court from granting leave to amend pleadings. *Howey v. United States*, 481 F.2d 1187, 1191(9th Cir. 1973); *DCD Programs v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1986). However, in combination with other factors, delay may be sufficient to deny amendment. *See Hurn v. Ret. Fund Trust of Plumbing*, 648 F.2d 1252, 1254 (9th Cir. 1981). Evaluating undue delay, the Court considers "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1387; *see also Eminence Capital*, 316 F.3d at 1052. Also, the Court should examine whether "permitting an amendment would . . . produce an undue delay in the litigation." *Id*. at 1387.

Here, *some* of the *facts* Plaintiff seeks to add were not known at the time of the original complaint and though she was aware of the *theory* when she filed both the Second and Third Amended Complaints. Indeed, the new ratification claim relies upon the same "unfounded" and "exonerated" determinations that were set forth in her First, Second and Third Amended Complaints. Moreover, the only substantive differences between the Third Amended Complaint and the proposed Fourth Amended Complaint seem be that she learned the investigation of her citizen complaint was conducted by internal affairs and identification of the factual findings of the investigator which supported the ultimate conclusions--of which she has been aware since receiving the notification about the results of her citizen complaint in June 2016. In any event, because Plaintiff did not delay in seeking leave to amend after learning the new facts that she asserts support her ratification claim, this factor weighs slightly in favor of the amendment.

### 3. Bad faith

There is no evidence before the Court suggesting Plaintiff acted in bad faith in seeking the proposed amendment. Therefore, this factor does not weigh against granting leave to amend.

### 4. Futility of amendment

Futility may be found where the proposed claims duplicate existing claims or patently frivolous, or both. *See Bonin*, 59 F.3d at 846. In addition, an amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988). Further, a court may find a claim is futile if it finds "inevitability of a claim's defeat on summary judgment." *California v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004) (quoting *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987)). A proposed amendment is futile, if it cannot withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)) (reh'g en banc *Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin,* 59 F.3d at 845; *see also Miller*, 845 F.2d at 214.

#### a. Plaintiff's allegations

As detailed above, Ms. Neylon seeks to state a claim for ratification by Sheriff Lutze and the

County of Inyo. (Doc. 46-2 at 17) Notably, the claim is brought against Lutze as the policymaker for the County of Inyo and against the County itself.[2] (Doc. 46-2 at 17, ¶ 73) As a result, Plaintiff contends Sheriff Lutze and the County are liable for violating her rights under the Fourteenth Amendment. (*Id.*)

Defendants argue that the proposed ratification claim is futile, asserting the above allegations are vague and conclusory, and "amount to nothing more than the 'failure to discipline' theory of ratification that has been soundly rejected by the Ninth Circuit and District Courts." (Doc. 50 at 5)

b. *Legal Standards Governing Section 1983 Claims*

A plaintiff seeking to state a claim for a violation of her constitutional rights may state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. To plead a Section 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) a constitutional right was deprived, and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury she suffered and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). Thus, Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff." *Chavira v. Ruth*, 2012 WL 1328636 at *2 (E.D. Cal. April 17, 2012). An individual deprives another of a constitutional right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In other words, "[s]ome culpable action or in action must be attributable to defendants." *See Puckett v. Corcoran Prison - CDCR*, 2012 WL 1292573, at *2 (E.D.

---

[2] Oddly, however, Ms. Neylon alleges that the claims against Lutze are brought in his "individual capacity." (Doc. 46-2 at 5)

Cal. Apr. 13, 2012).

                         *c.*        *Liability of the County*

A municipality may only be liable where it individually causes a constitutional violation via "execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent them." *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978); *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002). Municipal liability under *Monell* can arise three ways:

> (1) [W]hen official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct.

*Rodelo v. City of Tulare*, 2016 WL 561520, at *3 (E.D. Cal. Feb. 12, 2016).

"To prove *Monell* liability based on ratification, the plaintiff must show that the final policymaker in question had 'knowledge of the constitutional violation and *actually approved of it*. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a section 1983 claim.'" *Kyles v. Baker*, 72 F. Supp. 3d 1021, 1044 (N.D. Cal. 2014) (emphasis added) (quoting *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)). "The final policymaker's response to the subordinate's unconstitutional conduct must amount to more than acquiescence; he or she must have affirmatively approved both the subordinate's decision and the basis for it." *Id.* (citing *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992)). In addition, "there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Garcia v. City of Imperial*, 2010 WL 3911457, at *2 (S.D. Cal. Oct. 4, 2010); *see also Alegrett v. City & Cty of S.F.*, 2014 WL 1911405, at *9 (N.D. Cal. May 13, 2014) ("[F]ailure of a police department to discipline in a specific instance is not an adequate basis for municipal liability").

Plaintiff alleges that Sheriff Lutze acted as the policy maker and "ratified and approved"[3] of the

---

[3] Notably, however, she fails to tie the internal affairs investigation to Lutze. She alleges that it was the Undersheriff who notified her of the results of the internal affairs investigation and there appear to be allegations that Lutze ever had any knowledge about this action. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438,

12

actions of Richards and Durbin, and the "decision and the basis for falsely arresting and imprisoning Plaintiff… by conducting an internal affairs division investigation only after receiving a citizen's complaint." (Doc. 46-2 at 16, ¶ 73) She also contends the actions were ratified by Sheriff Lutze "upholding the conclusion" that her complaints were "unfounded" because the actions were "in compliance" with the County's policies; failing to take any remedial action, such as disciplining or admonishing Richards; and failing to change the County's policies to "prevent false arrest and imprisonment in the future." (*Id.*)

Significantly, Plaintiff fails to allege any policymaker—whether Sheriff Lutze or not— had knowledge of the constitutional violation at the time it occurred. Indeed, there are no facts that Sheriff Lutze approved of the actions taken by Richards and Durbin at the time Plaintiff was taken into custody and incarcerated. Rather, the facts alleged in the proposed Fourth Amended Complaint address decisions made by final policymakers several months after Plaintiff's incarceration, after Plaintiff sent a citizen complaint in April 2016, and the failure to discipline Richards and Durbin. (*See* Doc. 45 ¶¶ 8, 36; Doc. 46-2 at 16, ¶ 73). In this manner, the plaintiff seeks to impose liability on the basis that the Sheriff's actions in ratifying the actions of the arresting officers, informs the understanding of the requirements of the policy.

On the other hand, the "mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle*, 382 F.3d at 987 (9th Cir. 2004); *see also Peterson v. City of Forth Worth Texas*, 588 F.3d 838, 848 (5th Cir. 2009) (no ratification where the Chief of Police determined after investigation that the officers complied with department policies); *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989) ("we cannot hold the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell*"). The parties disagree whether the plaintiff has alleged sufficient facts demonstrate more than a mere failure to discipline. While the Court is doubtful the plaintiff has done so, it cannot say this with certainty.

> d.  *Individual liability*

---

441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) [when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.]

At the hearing, Plaintiff asserted that the new fifth claim seeks to impose liability on Sheriff Lutze individually in addition to stating further grounds for *Monell* liability. As noted above, the proposed fifth claim does not seem to rely upon any facts that Lutze acted in any manner that may be attributed to his individual capacity and, seems to fail to demonstrate any connection between him and the outcome of the IA investigation. However, because the Court finds that the fifth claim *may* not be futile, whether it states a claim against Lutze would have no impact on the ruling here.

### 5. Prejudice to the opposing party

The most critical factor in determining whether to grant leave to amend is prejudice to the opposing party. *Eminence Capital*, 316 F.3d at 1052. The burden of showing prejudice is on the party opposing an amendment to the complaint. *DCD Programs*, 833 F.2d at 187; *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (9th Cir. 1977). Prejudice must be substantial to justify denial of leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). There is a presumption in favor of granting leave to amend where prejudice is not shown under Rule 15(a). *Eminence Capital*, 316 F.3d at 1052.

Defendants do not argue that they will suffer prejudice as a result of leave to amend being granted. (*See generally* Doc. 50) Indeed, non-expert discovery will remain open in this action until December 29, 2017, and expert discovery must be completed by February 9, 2018. (*See* Doc. 28 at 3) Accordingly, this is not an action in which discovery would be required to be re-opened, and the proceedings will not be delayed. *See Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (explaining that "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint"). Consequently, this factor weighs in favor of granting leave to amend.

### IV. Conclusion and Order

Based upon the foregoing, the Court finds Plaintiff has satisfied the diligence requirements of Rule 16. In addition, the factors set forth by the Ninth Circuit weigh in favor of allowing Plaintiff to file the Amended Complaint. *See Madeja*, 310 F.3d at 636. Therefore, the Court is acting within its discretion in granting the motion to amend. *See Swanson*, 87 F.3d at 343.

///

Accordingly, the Court **ORDERS**:

1. Plaintiffs' motion to amend (Doc. 46) is **GRANTED**; and
2. Plaintiffs **SHALL** file her amended complaint within three days of the date of service of this order.

IT IS SO ORDERED.

Dated: **May 1, 2017**　　　　　　　　　　**/s/ Jennifer L. Thurston**
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE