# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

MELISSA M. NEYLON,

**Plaintiffs**

v.

**COUNTY OF INYO, INYO COUNTY SHERIFF'S OFFICE, BILL LUTZE, DOUGLAS RICHARDS, and DOES 1 to 50,**

**Defendants**

CASE NO. 1:16-CV-0712 AWI JLT

**ORDER ON PLAINTIFF'S MOTION TO STRIKE**

(Doc. No. 55)

 

This case stems from the erroneous arrest by Inyo County Sheriff's deputies of Plaintiff Melissa Neylon ("Neylon"), pursuant to an outstanding warrant from Indiana for a Melissa Chapman ("Chapman"). The operative complaint is the Fourth Amended Complaint ("FAC"). Neylon now moves under Rule 12(f) to dismiss all affirmative defenses alleged in the Answer. For the reasons that follow, Neylon's motion will be granted in part and denied in part.[1]

## GENERAL BACKGROUND

From the Complaint, Neylon was at the Inyo County Jail in connection with her employment on December 4, 2015. At the Jail, Neylon was arrested and imprisoned based on an outstanding felony warrant from Indiana for Chapman. Neylon's association with the Indiana warrant was solely based on an alleged hit on one of Neylon's former legal names, after the former legal name appeared on a database. Defendant Sgt. Douglas Richards ("Richards") of the Inyo County Sheriff's Office mistakenly identified Neylon as Chapman. After Neylon's arrest, Richards received information about Chapman's height, weight, hair, eye color, and date of birth.

---

[1] Neylon's husband, Shaun Neylon, was dismissed from this case on August 16, 2017, pursuant to stipulation.

The subsequent information about Chapman was not conclusive and not sufficiently similar to Neylon. Neylon was imprisoned and charged with a felony crime based on the Indiana warrant for Chapman.

On December 18, 2015, an Identity Hearing ("ID Hearing") before Judge Lamb of the Inyo County Superior Court was held. Richards testified that there was a "Live Scan" fingerprint match between Neylon and Chapman. This testimony was allegedly false. There was no fingerprint match between Neylon and Chapman. Based in part on Richards's misrepresentation, Judge Lamb decided to continue to hold Neylon.

On December 21, 2015, Neylon was finally released from Jail, and employees of the Inyo County Sheriff's office understood that Neylon was not in fact Chapman.

## LEGAL FRAMEWORK

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir 2010); Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983). Immaterial matter is defined as matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded." Whittlestone, 618 F.3d at 974. Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the issues in question." Id. Scandalous matters are allegations "that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court," and "includes allegations that cast a cruelly derogatory light on a party or other person." Quatela v. Stryker Corp., 820 F.Supp.2d 1045, 1050 (N.D. Cal. 2010). Redundant allegations are allegations that "constitute a needless repetition of other averments or are foreign to the issue." Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D. Cal. 2005). Granting a motion to strike may be proper if it will make the trial less complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a

defense and that their presence in the pleading will be prejudicial to the moving party.  See Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527-28 (9th Cir. 1993).[2]

An affirmative defense may be insufficient either as a matter of law or as a matter of pleading.  Gomez v. J. Jacobo Farm Labor Contr., Inc., 188 F.Supp.3d 986, 991 (E.D. Cal. 2016). An affirmative defense is legally insufficient if it "lacks merit under any set of facts the defendant might allege."  Id. (quoting Dodson v. Strategic Restaurants Acquisition Co., 289 F.R.D. 595, 603 (E.D. Cal. 2013)).  Affirmative defenses are insufficient as a matter of pleading if they fail to give the plaintiff "fair notice of the defense."  Simmons v. Navajo Cnty., 609 F.3d 1011, 1012 (9th Cir. 2010); Wyshak v. City Nat'l Bank, 607 F.2d 824, 827 (9th Cir. 1979); Gomez, 188 F.Supp.3d at 991.  "'[T]he fair notice' required by the pleading standards only requires describing [an affirmative] defense in 'general terms.'"  Kohler v. Flava Enters., Inc., 779 F.3d 1016, 1019 (9th Cir. 2015); Gomez, 188 F.Supp.3d at 991.  "Fair notice . . . requires that the defendant state the nature and grounds for the affirmative defense."  Gomez, 188 F.Supp.3d at 992; United States v. Gibson Wine Co., 2016 U.S. Dist. LEXIS 55053, *13(E.D. Cal. Apr. 25, 2016).  "Although 'fair notice' is a low bar that does not require great detail, it does require a defendant to provide 'some factual basis' for its affirmative defense."  Gomez, 188 F.Supp.3d at 992; Gibson Wine, 2016 U.S. Dist. LEXIS 55053 at *13.  Fact barren affirmative defenses or bare references to doctrines or statues are unacceptable because they "do not afford fair notice of the nature of the defense pleaded."  Gomez, 188 F.Supp.3d at 992; Gibson Wine, 2016 U.S. Dist. LEXIS 55053 at *14.


**PLAINTIFFS' MOTION**

**1.**      **First Affirmative Defense – Qualified Immunity**

*Plaintiff's Argument*

Neylon argues that the defense is legally insufficient to the extent that Defendants are attempting to apply qualified immunity to the state law claims.  Neylon also argues that the defense is factually insufficient in that it is nothing more than a fact-barren reference to qualified immunity.  Further, the defense is a redundant negative defense because it denies liability by

---

[2] Reversed on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)

alleging defects in her prima facie case. Finally, the defense is immaterial to the extent that it suggests that any defendant subjectively acted in good faith.

*Defendants' Opposition*

Defendants argue that the first affirmative defense should not be stricken. First, the defense is not being asserted against state law claims. Second, qualified immunity is well known, and the allegations give Neylon fair notice. Third, Neylon cites no authority that the defense is a redundant negative defense. Finally, the defense is not impertinent or immaterial because the good faith allegation is a way of alleging that the defendants did not knowingly violate the law.

*Answer's Allegations*

The first affirmative defense reads:

> At all times mentioned in the Complaint, the individual Defendants were acting in good faith and are entitled to qualified immunity. Qualified immunity shields government officials from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). County of Inyo personnel acted in good faith, and did not violate clearly established statutory or constitutional rights in the arrest and detention of Melissa Neylon.

*Discussion*

Plaintiffs are correct that qualified immunity has no application to the state law claims in this case. Johnson v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1171 (9th Cir. 2013). However, Defendants confirm that they are not asserting qualified immunity against any state law claims. See Doc. No. 59 at 4:23. Given Defendants' confirmation and the well-established rule that qualified immunity does not apply to state law claims, the Court will read the first affirmative defense as applying only to the individual defendants[3] and to the 42 U.S.C. § 1983 claims.

With respect to factual sufficiency, the Court is satisfied that fair notice has been given. The allegations do not simply state that the officers are entitled to qualified immunity and stop there. The allegations expressly identify the affirmative defense, cite pertinent authority that describes the defense, and state that the officers did not violate clearly established law in connection with the arrest and detention of Neylon. Given the nature of qualified immunity, and

---

[3] A municipality may not assert the defense of qualified immunity to claims brought under 42 U.S.C. § 1983. Eng v. Cooley, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009).

the fact that it is a well established, often litigated, and well understood defense, it is unclear what further factual allegations should be included in order to provide "fair notice." While it would certainly be possible for Defendants to cite other precedent that supports their assertion of qualified immunity, or to specifically identify what unique factual aspects of this case show that the law was not clearly established, such allegations would only be needed to meet a heightened pleading standard. Cf. Gomez, 188 F.Supp.3d at 991-92 (rejecting a more heightened pleading standard under *Iqbal* and *Twombly* for pleading affirmative defenses). All that is required is "fair notice," which is a fairly low bar. Id. at 992. Because Defendants have expressly identified the defense, their particular conduct that should be immune, and stated that their particular conduct did not violate clearly established law, Defendants have done enough to adequately plead qualified immunity. Cf. Wyshak, 607 F.2d at 827 (holding that an answer that simply alleged "plaintiff's claims are barred by the applicable statute of limitations" along with an attached memorandum that specifically identified Cal. Code Civ. P. § 338.1 as the applicable limitations period, was sufficient to give the plaintiff "fair notice").

With respect to redundancy, Neylon is correct that "negative" defenses, i.e. defenses that simply negate an element of the plaintiff's claim or defenses that state the plaintiff cannot meet her burden as to an element of proof, are not affirmative defenses. See Zivkovic v. Southern Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002); Gomez, 188 F.Supp.3d at 991; Barnes v. AT&T Pension Benefit Plan, 718 F.Supp.2d 1167, 1173-74 (N.D. Cal. 2010). An affirmative defense is one that precludes liability even if all of the elements of a plaintiff's claim are proven. Gomez, 188 F.Supp.2d at 991. A "negative defense" that is pled as an affirmative defense will be stricken as redundant. See id.; Barnes, 718 F.Supp.2d at 1174. However, contrary to Plaintiffs' arguments, it is well established that qualified immunity is an affirmative defense. Harlow v. Fitzgerald¸ 457 U.S. 800, 815 (1982); Norwood v. Vance, 591 F.3d 1062, 1075 (9th Cir. 2010). Skoog v. County of Clackamas, 469 F.3d 1221, 1229 (9th Cir. 2006); Carey v. Nevada Gaming Control Bd., 279 F.3d 873, 879 (9th Cir. 2002); Presbyterian Church (USA) v. United States, 870 F.2d 518, 527 (9th Cir. 1989). Because qualified immunity is an affirmative defense, it will not be stricken as redundant.

Finally, Defendants are not attempting to inject the deputies' subjective motivations into the liability aspects of this case by alleging that the officers "acted in good faith." Qualified immunity is an objective inquiry. See Torres v. City of L.A., 548 F.3d 1197, 1211 (9th Cir. 2008). However, the Supreme Court has stated that "qualified immunity protects all but the plainly incompetent *or those who knowingly violate the law*." Mullenix v. Luna, 136 S.Ct. 305, 308 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 441 (1986)) (emphasis added). Consistent with this precedent, Defendants confirm that they are attempting to allege that they did not knowingly violate the law. See Doc. No. 59 at 6:24-7:1. A person who knowingly violates the law cannot be acting in "good faith." Therefore, the first affirmative defense is not immaterial or impertinent.[4]

In sum, the first affirmative defense will not be stricken.

### **2.** **Second Affirmative Defense – Eleventh Amendment Immunity**

*Plaintiff's Argument*

Neylon argues that the second affirmative defense is legally and factually insufficient. First, the non-entity defendants are sued in their individual capacities, not their official capacities, and cannot invoke the Eleventh Amendment. Also, Inyo County is not a state and cannot invoke the protections of the Eleventh Amendment. The two cases cited within the affirmative defense are not persuasive because they were either superseded by subsequent Ninth Circuit authority or were wrongly decided. Second, no facts are alleged that show the defendants are state actors.

*Defendants' Opposition*

Defendants respond that the second affirmative defense is asserted by Inyo County. Where

---

[4] Defendants also state that, apart from qualified immunity, courts have recognized that "good faith" is a defense to punitive damages. To the extent that Defendants are attempting to argue that "good faith" is a separate affirmative defense, there are problems. First, there are ten discrete affirmative defenses pled, and "good faith" is simply not one of them. Under no reasonable reading of the answer can three words that are imbedded within an unrelated affirmative defense be considered a separate affirmative defense to punitive damages. Second, the two Ninth Circuit cases cited by Defendants in support of their argument (*Alvarado v. Federal Express Corp.*, 384 F. App'x 585, 590 (9th Cir. 2010) and *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 516-17 (9th Cir. 2000)) are not 42 U.S.C. § 1983 cases, rather, they are Title VII cases. These cases recognize the Supreme Court's decision in *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 545 (1999) that, "In the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where those decisions are contrary to the employer's 'good faith efforts to comply with Title VII.'" Third, to the extent that "good faith" may be intended to be a short hand way of saying that the Defendants did not act with malice, such an allegation simply negates a possible element of punitive damages. As explained above, negative defenses that are pled as affirmative defenses will be stricken. Gomez, 188 F.Supp.2d at 991; Barnes, 718 F.Supp.2d at 1174. For these reasons, the Court will not read a separate "good faith" affirmative defense to punitive damages into the answer.

the municipality merely executes a facially valid warrant or court order, the municipality is a state actor that may assert Eleventh Amendment immunity. The factual allegations show that Inyo County personnel acted pursuant to a warrant and state law, which is sufficient to provide fair notice. Defendants state that it is unknown whether this affirmative defense will be pursued or whether Inyo County will prevail, but at this time, the defense should not be stricken.

*Answer's Allegations*

The second affirmative defense reads:

> Plaintiffs' claims for relief, and each of them, against Defendants are barred under the Eleventh Amendment to the U.S. Constitution pursuant to the doctrine set forth in *McMillian v. Monroe County*, 520 U.S. 781 (1997). "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes are not 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989)). Nominally [sic] County officials, including sheriffs, are state actors when they act at the behest of state law and/or court orders. See, e.g., Smith v. Cty. of San Mateo, No. C 99-00519 CRB, 1999 WL 672318, at *7 (N.D. Cal. Aug. 20, 1999) (sheriff was state rather than county official when detaining plaintiff pursuant to an outstanding bench warrant); see also Munoz v. Kolender, 208 F.Supp.2d 1125, 1152 (S.D. Cal. 2002). Defendants were state actors in detaining [Neylon] pursuant to: (1) the outstanding bench warrant issued for a "Melissa Chapman" by the State of Indiana; and (2) facially-valid orders of the Inyo County Superior Court issued following [Neylon]'s arraignment and subsequent "Identity Hearing."

*Discussion*

Despite affirmatively alleging that the second affirmative defense applies to "Defendants," the Defendants now clarify that only Inyo County is asserting Eleventh Amendment immunity. A review of the FAC shows that there are two 42 U.S.C. § 1983 claims alleged against Inyo County, the fourth cause of action (*Monell* liability) and the fifth cause of action (ratification). Although the affirmative defense is misleading as pled, the Court will accept the clarification and analyze the defense in relation to Inyo County and the two § 1983 claims against it.

Courts within the Ninth Circuit have held that when a sheriff's department holds a prisoner in preparation for further court proceedings or pursuant to a court order or warrant, the sheriff's department is acting as an arm of California and not as a county actor. See Buffin v. City & Cnty. of San Francisco, 2016 U.S. Dist. LEXIS 142734, *20-*24 (N.D. Cal. Oct. 14, 2016); McNeely v. County of Sacramento, 2008 U.S. Dist. LEXIS 12460, *11-*14 (E.D. Cal. Feb. 20, 2008); Munoz v. Kolender, 208 F.Supp.2d 1125, 1252-53 (S.D. Cal. 2002). In those situations, immunity is

appropriate. See id. Here, the allegations in the affirmative defense indicate that Inyo County is claiming immunity for claims or damages relating to Neylon's detention following arraignment and the ID Hearing. *Buffin*, *McNeely*, and *Munoz* indicate that this is a viable assertion of Eleventh Amendment immunity. Based on the briefing and arguments at this time, the Court cannot hold that the second affirmative defense is legally insufficient with respect to Neylon's detention after her arraignment and ID Hearing. See Gomez, 188 F.Supp.3d at 991.

The Ninth Circuit has held that a California sheriff is a county actor, and therefore subject to § 1983 liability, when the sheriff administers jails or investigates crime. See Jackson v. Barnes, 749 F.3d 755, 764-66 (9th Cir. 2014) (citing *inter alia* Brewster v. Shasta Cnty., 275 F.3d 803, 807-08 (9th Cir. 2001), Cortez v. County of L.A., 294 F.3d 1186, 1189 (9th Cir. 2002), and Streit v. County of L.A., 236 F.3d 552, 564-56 (9th Cir. 2001)); Mateos-Sandoval v. County of Sonoma, 942 F.Supp.2d 890, 900-02 (N.D. Cal. 2013); Nelson v. County of Sacramento, 926 F.Supp.2d 1159, 1167-68 (E.D. Cal. 2013). Here, Inyo County is claiming immunity based on a detention prior to arraignment pursuant to the Indiana warrant. Inyo County contends that the detention is analogous to cases like *Buffin* and *McNeely*, apparently because the deputies detained Neylon pursuant to a valid warrant, albeit one from another state. Neylon contends that the situation is in line with *Jackson* and *Brewster* because a criminal investigation was involved. Presumably Neylon means that the deputies had to run a check and then investigate whether Neylon was Chapman. Arguably, the unique facts of this case implicate both line of cases. However, the briefing and arguments of the parties are not sufficiently developed, and the nuances of the apparent facts relative to the case law is not sufficiently explored. Given the state of the briefing and the procedural posture of this case, the Court cannot say that Eleventh Amendment immunity lacks merit under any set of facts. See Gomez, 188 F.Supp.3d at 991. Therefore, the Court does not find at this time that the second affirmative defense is legally insufficient.[5]

Finally, the Court does not find that the second affirmative defense is factually insufficient. The Eleventh Amendment is identified, Defendants have clarified that only Inyo County is

---

[5] The Court is not holding as a matter of law that the second affirmative defense is legally sufficient. Neylon may challenge the applicability of the Eleventh Amendment after the case has progressed.

attempting to assert the defense, and the allegations explain that the sheriff's office was a state actor when Neylon was detained on the Indiana warrant and after Neylon was arraigned and had the ID Hearing. That is, the defense is identified, the defendant who is asserting the defense is *now* identified, and the basis for the defense is explained. Neylon has fair notice.

In sum, the second affirmative defense will not be stricken.

### **3.** **Third Affirmative Defense – Absolute Immunity**

*Plaintiff's Argument*

Neylon argues that this defense is legally and factually insufficient. First, the defense is legally insufficient to the extent that it is asserted by Inyo County. It is further legally insufficient because the absolute immunity afforded to witnesses is available only when the constitutional tort is that of simply giving false testimony. If the constitutional tort is the action of a police officer initiating a baseless prosecution, then the immunity does not apply. Richards is a complaining witness who is not entitled to immunity because he misidentified Neylon, misconstrued the results of her fingerprinting, and made misrepresentations concerning those results in furtherance of the criminal prosecution. Second, the defense is factually insufficient because it consists of nothing more than fact-barren references to absolute immunity.

*Defendants' Argument*

Defendants state that this defense is asserted by Richards. Although Neylon states that the defense is inapplicable because she alleged that Richards is a "complaining witness," that is not true. Richards was not a complaining witness because he did not arrest or actively investigate or encourage Neylon's prosecution. Defendants argue that they can make allegations that contradict the FAC.

*Answer's Allegations*

The third affirmative defense reads: "Witnesses are absolutely immune from liability for testimony in judicial proceedings. *Briscoe v. LaHue*, 460 U.S. 325, 345 (1983). To the extent that Plaintiffs' claims rest on the testimony of witnesses in a judicial proceeding, they are barred."

*Discussion*

"Witnesses, including police officers, are absolutely immune from liability for testimony at

trial . . . ." Lisker v. City of L.A., 780 F.3d 1237, 1242 (9th Cir. 2015). However, "[a]bsolute witness immunity does not extend to 'complaining witnesses,' those individuals whose allegations serve to bring about a prosecution." Paine v. City of Lompoc, 265 F.3d 975, 981 n.2 (9th Cir. 2001). Thus, "police officers are generally entitled to absolute immunity for perjury committed in the course of official proceedings, [but] complaining witnesses who wrongfully bring about the prosecution generally are not." Harris v. Roderick, 126 F.3d 1189, 1198 (9th Cir. 1997).

Her, it appears that the immunity would only have application to Plaintiffs' § 1983 malicious prosecution claim against Richards. The relevant allegation in the FAC is Paragraph 63. Paragraph 63 alleges that Richards maliciously subjected Neylon to prosecution and interfered with the prosecutor's judgment by omitting relevant and material information and supplying false information that Neylon was Chapman. FAC at ¶ 63. Paragraphs 2 through 25 are incorporated by reference under the malicious prosecution claim. See FAC at ¶ 62. Significantly, allegations that deal with the allegedly false testimony by Richards at the ID Hearing (Paragraphs 26 through 28) are not incorporated by reference. Based on the allegations in the FAC, and in particular the allegations that are not incorporated by reference under the malicious prosecution claim, the Court concludes that the malicious prosecution claim is not based on the actual testimony of Richards at the ID Hearing. Rather, the malicious prosecution claim is based on non-ID Hearing conduct. Because the malicious prosecution claim is not based on Richards' ID Hearing testimony, witness immunity does not apply and thus, the defense is immaterial and legally insufficient. See Gomez, 188 F.Supp.3d at 991. The third affirmative defense will be stricken.[6]

**4.**      **Fourth Affirmative Defense – Collateral Estoppel**

*Plaintiff's Argument*

Neylon argues *inter alia* that the collateral estoppel defense is legally and factually insufficient. The defense is legally insufficient because it relies on a probable cause determination by Judge Lamb. However, this Court has already determined that no probable cause determination was actually made.

---

[6] If Neylon attempts to recover damages that were caused by Richards's ID Hearing testimony, Richards may reassert witness immunity. At this time, however, the malicious prosecution claim as pled is not based on Richards's ID Hearing testimony.

*Defendants' Opposition*

Defendants argue that Plaintiffs are improperly arguing the merits of collateral estoppel. Judge Lamb's determination is relevant because a key issue is the reasonableness of mistaking Neylon for Chapman. At the ID Hearing, Judge Lamb considered a number of facts and concluded that there was probable cause to believe that Neylon was Chapman. Defendants argue that they are entitled to explore the relevance of that finding in discovery.

*Answer's Allegations*

The fourth affirmative defense reads:

> Collateral estoppel, "or issue preclusion, precludes relitigation of issues argued and decided in prior proceedings." Mycogen Corp. v. Monsanto Co., 28 Cal.4th 888, 896 (2002). Plaintiff's federal and state false arrest claims are barred by the doctrine of collateral estoppel. Under the doctrine of collateral estoppel, the probable cause determination by Judge Lamb . . . defeats [Neylon's] false arrest claim as a matter of law. [Neylon] may not collaterally attack that probable cause finding by filing a civil false arrest claim.

*Discussion*

This is not the first time that the Court has addressed collateral estoppel. In their first motion to dismiss, Defendants argued that collateral estoppel barred Neylon's false arrest claims. See Doc. No. 12-1 at 8:3-9:20. The Court held that collateral estoppel did not bar the false arrest claims for two reasons: (1) facts and evidence were presented at the ID Hearing that were not available or considered at the time of arrest, and (2) the ID Hearing did not determine that probable cause existed at the time of arrest, rather the ID Hearing determined that probable cause existed at the time of the hearing to believe that Neylon was Chapman. See Neylon v. County of Inyo, 2016 U.S. Dist. LEXIS 161326, *20-*21 (E.D. Cal. Nov. 18, 2016). Both of these reasons are fatal to a collateral estoppel defense. See Wige v. City of Los Angeles, 713 F.3d 1183, 1186 (9th Cir. 2013) ("First, issue preclusion does not apply in false arrest actions when additional evidence not available to the officers at the time of arrest is presented at the preliminary hearing . . . ."); Lucido v. Superior Ct., 51 Cal.3d 335, 341 (1990) (holding that the elements of collateral estoppel include an identity of issues, the issue was actually litigated, and the issue was necessarily decided).

Defendants do not explain why the Court's prior analysis was either incorrect or should not

apply to this affirmative defense.  Without a contrary argument from Defendants, the Court can only conclude that its prior analysis should continue to hold.  Given the Court's prior finding that collateral estoppel does not defeat Neylon's false arrest claim, see Neylon, 2016 U.S. Dist. LEXIS 161326 at *20-*21, the fourth affirmative defense is immaterial and will be stricken.  See Supermarket of Homes, Inc. v. San Francisco Valley Bd. of Realtors, 786 F.2d 1400, 1409 (9th Cir. 1986) (affirming the striking of an affirmative defenses as immaterial based on a prior ruling).

### 5. Fifth Affirmative Defense – California Civil Code § 43.55[7]

*Plaintiff's Argument*

Neylon argues that this defense is legally insufficient and redundant.  It is legally insufficient because it cannot apply to federal claims.  It is legally insufficient as to the state claims because those claims are premised on Defendants' conduct being unreasonable.  The defense is redundant because it is not an affirmative defense, rather it simply denies that Defendants' conduct was unreasonable.

*Defendants' Opposition*

Defendants argue that they are not limited by the facts in the Plaintiffs' complaint and may plead facts that are contrary to the complaint.  Defendants argue that they are not required to plead affirmative defenses that only assume the truth of the allegations in the complaint.

*Answer's Allegations*

The fifth affirmative defense reads:

> Civil Code § 43.55 immunizes a police officer's reliance on a warrant regular on its face, provided the police officer acts without malice and in the reasonable belief that the person  arrested is the one referenced in the warrant.  *See Lopez v. City of Oxnard*, 207 Cal.App.3d 1 (1989).  The Inyo County Defendants acted in reasonable reliance on a facially-valid warrant issued by the State of Indiana.

*Discussion*

Plaintiffs are correct that a state law immunity does not apply to 42 U.S.C. § 1983 claims.  See Kimes v. Stone, 84 F.3d 1121, 1127 (9th Cir. 1996); Guillory v. Orange County, 731 F.2d

---

[7] In relevant part, Civil Code § 43.55 reads:  "There shall be no liability on the part of, and no cause of action shall arise against, any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if the peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant."  Cal. Civ. Code § 43.55(a).

1379, 1382 (9th Cir. 1984). Thus, Civil Code § 43.55 does not apply to Plaintiffs' § 1983 causes of action. See id.

With respect to the state law claim for false arrest, this Court addressed § 43.55 as part of Defendants' motion to dismiss. In that motion, Defendants argued that dismissal of the false arrest claim was proper because § 43.55 barred Neylon from recovering. See Neylon, 2016 U.S. Dist. LEXIS 161326 at *15. Relying on *Garcia v. County of Riverside*, 817 F.3d 635 (9th Cir. 2016), this Court rejected Defendants' arguments. See Neylon, 2016 U.S. Dist. LEXIS 161326 at *15. In *Garcia*, the district court properly denied qualified immunity in resolving a motion to dismiss. Of particular import, the Ninth Circuit held that § 43.55 "[does] not shield defendants from liability under state law because [its] application is premised on reasonable beliefs, and the crux of plaintiff's claim is that it was unreasonable for officers to believe that he was the person who was described in the warrant without greater investigation. . . . Whether the officers who subjected plaintiff to imprisonment on the warrant acted reasonably is question that must be determined in this litigation assessing the boundaries of due process. There is at this time no applicable state or federal law immunity." *Garcia*, 817 F.3d at 645.

Plaintiffs cited to *Garcia* in their motion, but Defendants did not address it. No material distinction between *Garcia* and this case is apparent. Just as *Garcia* controlled the outcome of Defendants' motion to dismiss, it controls the outcome of Neylon's motion to strike: § 43.55 has no application to this case because the crux of Neylon's claims are that Defendants did not have reasonable beliefs. See id. Therefore, Neylon's motion to strike will be granted.

### 6. Sixth Affirmative Defense – California Penal Code § 847[8]

*Parties' Arguments*

The parties make the same arguments regarding the sixth affirmative defense as they did regarding the fifth affirmative defense.

---

[8] Penal Code § 847 reads in pertinent part: "(b) There shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer or federal criminal investigator or law enforcement officer described in subdivision (a) or (d) of Section 830.8, acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest under any of the following circumstances: (1) The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful. (2) The arrest was made pursuant to a charge made, upon reasonable cause, of the commission of a felony by the person to be arrested. (3) The arrest was made pursuant to the requirements of Section 142, 837, 838, or 839." Cal. Pen. Code § 847(b).

*Answer's Allegations*

The sixth affirmative defense reads:

Penal Code § 847 bars false arrest claims against a peace officer if the officer is acting within the scope of his or her authority and the officer had reasonable cause to believe the arrest was lawful. The Inyo County Defendants acted within the scope of their authority and had reasonable cause to believe the arrest of [Neylon] was lawful.

*Discussion*

In *Garcia*, the Ninth Circuit simultaneously addressed the applicability of § 43.55 and § 847. As quoted above, Penal Code § 847 "[does] not shield defendants from liability under state law because [its] application is premised on reasonable beliefs, and the crux of plaintiff's claim is that it was unreasonable for officers to believe that he was the person who was described in the warrant without greater investigation. . . . Whether the officers who subjected plaintiff to imprisonment on the warrant acted reasonably is question that must be determined in this litigation assessing the boundaries of due process. There is at this time no applicable state or federal law immunity." Garcia, 817 F.3d at 645. Therefore, the analysis concerning the § 43.55 defense applies equally to the Penal Code § 847 defense. Just as the Court relied on *Garcia* and refused to dismiss Neylon's false arrest claim due to § 43.55 immunity, the Court did the same with respect to § 847 immunity. Neylon, 2016 U.S. Dist. LEXIS 161326 at *21-*22.

In the absence of any discussion by Defendants, the Court concludes that its prior analysis and *Garcia* controls. Therefore, § 847 does not apply to this case and will be stricken. See Garcia, 817 F.3d at 645; Neylon, 2016 U.S. Dist. LEXIS 161326 at *21-*22.

**7.** **Seventh Affirmative Defense – California Government Code § 820.2[9]**

*Plaintiff's Argument*

Neylon argues that the defense is legally and factually insufficient. It is legally insufficient because Government Code § 820.2 cannot apply to § 1983 claims and does not apply to state law claims based on an officer's decision to detain or arrest. It is factually insufficient because the affirmative defense is little more than a reference to the statute without supporting facts.

---

[9] California Government Code § 820.2 reads: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion is abused."

1    *Defendants' Opposition*

2        Defendants argue that courts are reluctant to strike defenses like § 820.2 immunity prior to

3    further development.  In any event, § 820.2 applies to Inyo County and Sheriff Lutze with respect

4    to the state law claims of negligence and intentional infliction of emotional distress because

5    Neylon alleges that Sheriff Lutze was negligent in maintaining policies, customs, and practices.

6    Sheriff Lutze's decisions relating to the creation and maintenance of policies and the practices of

7    his department are basic policy decisions that are entitled to immunity.

8    *Answer's Allegations*

9        The seventh affirmative defense reads:

10       California Government Code § 820.2 provides a public employee with immunity
         for an injury resulting from his act or omission where the act or omission was the
11       result of the exercise of the discretion vested in him, whether or not such discretion
         be abused.  On information and belief, at all relevant times and in the performance
12       of all acts and/or omissions alleged in the complaint, Inyo County Personnel acted
         within the discretion vested in them as public employees. Thus, these Defendants
13       are not liable for any injuries resulting from the acts and/or omissions alleged in the
         complaint, even if the sheriff's deputies employed by the County of Inyo abused
14       their discretion.

15   *Discussion*

16       The immunity of Government Code § 820.2 "is reserved for those '*basic policy decisions*

17   [which have] . . . been [expressly] committed to coordinate branches of government,' and as to

18   which judicial interference would thus be 'unseemly.'"  <u>Liberal v. Estrada</u>, 632 F.3d 1064, 1084

19   (9th Cir. 2011) (quoting <u>Gillan v. City of San Marino</u>, 147 Cal.App.4th 1022, 1051 (2007)).

20   Decisions that do not rise to the level of "basic policy decisions," but instead are merely

21   "operational" decisions, do not receive immunity under § 820.2.  <u>See</u> <u>Liberal</u>, 632 F.3d at 1084.

22   "[T]o obtain immunity for discretionary or policy decisions, 'the [defendant] must make a

23   showing that such a policy decision, consciously balancing risks and advantages, took place.  The

24   fact that an employee normally engages in discretionary activity is irrelevant if, in a given case,

25   the employee did not render a considered decision.'"  <u>Hampton v. County of San Diego</u>, 62

26   Cal.4th 340, 353-54 (2015) (quoting <u>Johnson v. State of California</u>, 69 Cal.2d 782, 794 n.8

27   (1968)).  A peace officer's decision to arrest or detain an individual is an operational decision that

28   does not receive immunity under § 820.2.  <u>Liberal</u>, 632 F.3d at 1084-85.

15

Here, Defendants' opposition makes several concessions that adequately address legal sufficiency.  First, Defendants state that the immunity only applies to the seventh and eighth causes of action, which are the state law claims for negligence and intentional infliction of emotional distress ("IIED").[10]  This concession is proper because § 820.2 does not apply to § 1983 claims.  See Guillory, 731 F.2d at 1382.  Second, Defendants have conceded that only Sheriff Lutze and Inyo County (derivatively through Sheriff Lutze)[11] will be pursuing § 820.2 immunity.  This is appropriate because the decisions of Deputies Richards and Durbin to detain and arrest Neylon are not protected by § 820.2.  See Liberal, 632 F.3d at 1084-85.  Defendants further clarify that the basis of the § 820.2 immunity in this case is Sheriff Lutze's decisions relating to the creation and maintenance of the policies and practices of the Inyo County Sheriff's Department.  Neylon does not respond to this application of § 820.2.  If actual discretion was used, i.e. a conscious balancing of risks and benefits took place, see Hamilton, 62 Cal.4th at 353-54; Johnson, 69 Cal.2d at 794 n.8, then it is possible that § 820.2 would be available to Sheriff Lutze and Inyo County regarding the creation and maintenance of departmental policies.  Therefore, the Court cannot hold at this time that the seventh affirmative defense is legally insufficient.  See Gomez, 188 F.Supp.3d at 991.

With respect to factual sufficiency, as quoted above, the seventh affirmative defense clearly identifies § 820.2 as being asserted.  However, the allegations do not explain the discretionary policy decision at issue.  All that can be said is that Defendants think that § 820.2 somehow applies in this case based on unknown discretionary conduct.  Moreover, the allegations do not limit the defense to only two of the three state law causes of action and they do not limit the defense to only Sheriff Lutze and Inyo County.[12]  Instead, the seventh affirmative defense indicates that it applies to all claims and all parties.  The opposition shows that Defendants know

[10] Defendants stated that § 820.2 applies to the seventh, eighth, and ninth causes of action.  The ninth cause of action is a loss of consortium claim by Shaun Neylon.  With the dismissal of Shaun Nelyon, the ninth cause of action was also dismissed.

[11] Under California law, if a government employee is entitled to immunity, the government employer is also derivatively immune.  See Cal. Gov. Code § 815.2(b); AE v. County of Tulare, 666 F.3d 631, 638 (9th Cir. 2012); Asgari v. City of Los Angeles, 15 Cal.4th 744, 752 n.5 (1997).

[12] The sixth cause of action is a state law false imprisonment claim.

that § 820.2 could apply in only a limited capacity – to two defendants and two claims. Despite this knowledge, Defendants alleged a broad application of § 820.2 without any limitation. The allegation is misleading and is not a proper pleading practice. Cf. Fed. R. Civ. P. 11(b)(2), (3) (defense and factual contentions must be warranted and have evidentiary support or likely to have evidentiary support). A plaintiff should not have to guess at who is asserting a defense or to which claim a defense applies.[13] See Salazar v. County of Orange, 564 F. App'x 322 (9th Cir. 2014) (noting that the district court properly dismissed a complaint where the plaintiff "impermissibly lump[ed] together claims and defendants" and left "Defendants guessing which claims were brought against them."); Beco Dairy Automation, Inc. v. Global Tech. Sys., 2015 U.S. Dist. LEXIS 130503, *35 (E.D. Cal. Sept. 28, 2015) (holding that a defense was overbroad and did not give fair notice when the defense did not sufficiently indicate to which claim or claims it applied); United States Welding, Inc. v. Tecsys, Inc., 2015 U.S. Dist. LEXIS 73108, *6-*7 (D. Col. June 4, 2015) (holding *inter alia* that failure to link a particular defense to a particular claim did not give fair notice); Flores v. EMC Mortg. Co., 997 F.Supp.2d 1088, 1103 (E.D. Cal. 2014) ("A plaintiff suing multiple defendants 'must allege the basis of his claim against each defendant . . . ."); Gates v. District of Columbia, 825 F.Supp.2d 168, 170 (D. D.C. 2011) (noting that affirmative defenses did not identify the particular claims to which the defenses applied). The seventh affirmative defense requires Neylon to guess at who is actually alleging immunity, at what conduct is entitled to immunity, and how the immunity might apply or to which claims the immunity might apply. A plaintiff who is forced to make such guesses does not know the true nature or grounds of the defense, and thus, does not have "fair notice." Cf. Gomez, 188 F.Supp.3d at 992; Flores, 997 F.Supp.2d at 1103; Gates, 825 F.Supp.2d at 170.

Because the seventh affirmative defense as pled is too misleading, vague, and conclusory to provide "fair notice," it will be stricken as factually insufficient. However, because it appears that Defendants can properly plead a § 820.2 defense, leave to amend the seventh affirmative defense will be granted. See Wyshak, 607 F.2d at 827; Gomez, 188 F.Supp.3d at 993.

---

[13] In actions involving multiple parties and multiple claims, it is possible that an affirmative defense could apply to all claims and all parties. However, it is clear in this case that the seventh affirmative defense does not have such a broad application.

### 8. Eighth Affirmative Defense – California Government Code § 820.4[14]

*Plaintiff's Argument*

Neylon makes three arguments against the eighth cause of action. First, the defense is legally insufficient because it cannot apply to the federal claims and it cannot apply to the state law false imprisonment claim. Second, the defense is factually insufficient because there are no factual allegations pled. Third, the defense is redundant because it essentially contradicts the FAC's allegations by claiming that the defendants acted with due care.

*Defendants' Opposition*

Defendants argue that the eighth affirmative defense is asserted by all Defendants against all state claims, except for false imprisonment. First, with respect to legal insufficiency, Defendants argue that they exercised due care in their enforcement of Penal Code § 1551.1, which authorizes the arrest of a person upon reasonable information that the accused is charged in the courts of another state. Section 820.4 also is relevant to allegations regarding Neylon's prosecution and the Sheriff's Department's response to a Citizen Complaint. Second, with respect to factual insufficiency, Defendants argue that there are sufficient facts alleged, but additional facts can be alleged. Finally, Defendants argue that the defense is not redundant and that they are not bound by the allegations in the Complaint in forming affirmative defenses.

*Answer's Allegations*

The eighth affirmative defense reads:

California Government Code § 820.4 provides a public employee with immunity for any act or omission, done while exercising due care, in the execution or enforcement of any law. On information and belief, at all relevant times and in the performance of all acts and/or omissions alleged in the complaint, Inyo County personnel exercised due care in the execution and enforcement of the law. Thus, Defendants are immune for all acts or omissions alleged in the complaint performed by sheriff's deputies employed by the County of Inyo.

*Discussion*

Initially, by its own terms, § 820.4 does not apply to claims of false arrest or false

---

[14] California Government Code § 820.4 reads: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

imprisonment.  See Cal. Gov. Code § 820.4; Asgari v. County of L.A., 15 Cal.4th 744, 752 (1997).  Defendants' opposition recognizes this by stating that § 820.4 applies to the remaining state law claims of negligence and IIED.  Given Defendants' opposition and § 820.4's express exclusion of false imprisonment claims, the Court will read § 820.4 as being asserted only against the negligence and IIED claims.

With respect to the negligence claims, both § 820.4 and negligence rely on due care. Negligence requires a finding that a defendant failed to exercise due care.  See Kesner v. Superior Ct., 1 Cal.5th 1132, 1142 (2016) (recognizing that a "plaintiff in any negligence suit must demonstrate a legal duty to use due care [and] a breach of such legal duty . . . ."); Damgaard v. Oakland High Sch. Dist., 212 Cal. 316, 319 (1931) ("The essence of negligence is the failure to exercise due care and take proper precaution in a particular case.").  Section 820.4 requires a finding that a government employee exercised due care in the execution or enforcement of a law. See Cal. Gov. Code § 820.4; Ogborn v. City of Lancaster, 101 Cal.App.4th 448, 462 (2002). "Due care" under § 820.4 "refers to acts and omissions by a public employee that are not negligent." Harb v. City of Bakersfield, 233 Cal.App.4th 606, 620 (2015).  In other words, "due care" is essentially the same for both negligence and § 820.4.  See Sullivan v. County of L.A., 12 Cal.3d 710, 717 (1974) (describing § 820.4 as an "immunity for public employees for their non-negligent acts in the execution or enforcement of any law . . . ."); Harb, 233 Cal.App.4th at 619-20.  Because of the shared meaning of "due care," a jury's determination that a defendant was negligent automatically determines that § 820.4 immunity is inapplicable, since the jury of necessity determined that "due care" was not utilized.  See Harb, 233 Cal.App.4th at 619-20.  Accordingly, when a claim of negligence is alleged against a government employee, § 820.4 merely amounts to a denial that due care was not exercised and thus, is redundant.  See id.; see also Talada v. City of Martinez, 2009 U.S. Dist. LEXIS 10908, *27-*28 (N.D. Cal. Feb. 12, 2009) (finding that dismissal of claims through operation of § 820.4 was improper because the allegations indicated the absence of due care).  Defendants' invocation of § 820.4 is redundant to their denials of negligence.

As to the IIED claim,[15] it would appear that a similar analysis to the negligence claim applies.  "A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009) (quoting Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993)).  "Outrageous conduct" is conduct that "is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  Hughes, 46 Cal.4th at 1050-51 (quoting Potter, 6 Cal.4th at 1001).  As discussed above, § 820.4 depends upon a government employee exercising due care.  See Ogborn, 101 Cal.App.4th at 462.  If a defendant either intends his extreme and outrageous conduct to cause emotional distress, or acts in reckless disregard of the probability that his extreme and outrageous conduct will cause emotional distress, either of which is necessary to recover for IIED, it would appear that such a defendant was not acting with "due care."  Like a finding of liability for negligence, it appears that a finding of liability for IIED would automatically show that the defendant did not act with due care and thus, would not be entitled to immunity under § 820.4.  Therefore, at this time, Defendants' invocation of § 820.4 is redundant to Defendants' denials of IIED.

In sum, the eighth affirmative defense is redundant to the denials in Defendants' answer.  The eighth affirmative defense will be stricken with prejudice as to the negligence and false imprisonment claims.  However, the parties' briefing with respect to the interaction between IIED and § 820.4 was sparse.  If, after review of this order and additional research, Defendants believe that they can make a good faith argument (consistent with Federal Rule of Civil Procedure 11) that § 820.4 applies to Neylon's IIED claim and is not redundant of mere denials, then they may amend their answer to include § 820.4.  However, such an amended affirmative defense shall be expressly limited to the IIED claim, shall be limited to only Richards and Inyo County, and shall include sufficient facts that indicate that Richards exercised "due care."

---

[15] The IIED claim is alleged against Richards and Inyo County.  See FAC ¶ 82.  The basis of the cause of action is not entirely clear because 50 prior paragraphs of the FAC are incorporated by reference.  See id. at ¶ 83.  Inyo County is alleged to be vicariously liable for Richards's actions through application of Government Code § 815.2(a).

### 9. Ninth Affirmative Defense – California Government Code § 821.6[16]

*Plaintiff's Argument*

Neylon argues that this defense is legally and factually insufficient. The defense is legally insufficient as to the federal claims because it is a state law immunity. The defense is legally insufficient, as well as immaterial, to the state law claims because § 821.6 is limited to malicious prosecution claims, and there are no state law malicious prosecution claims being pursued. Finally, the defense is factually insufficient because insufficient facts are pled.

*Defendants' Opposition*

Defendants argue that § 821.6 applies in this case because it precludes damages after the date that the district attorney filed criminal charges. In terms of factual insufficiency, if the Court determines that insufficient facts are pled, Defendants state that they can allege additional facts.

*Answer's Allegations*

The ninth affirmative defense reads:

> California Government Code sec. 821.6 provides a public employee with immunity for any injury cause by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause. On information and belief, at all relevant times and in the performance of all acts and/or omissions alleged in the complaint, Inyo County Personnel were acting within the scope of their employment. Thus, Defendants are immune from any injuries that a resulted from the institution or prosecution of any judicial or administrative proceedings that may have occurred as a result of any actions of the sheriff's deputies employed by the COUNTY OF INYO, even if they acted negligently or willfully.

*Discussion*

Neylon is correct that § 821.6 does not apply to the claims under 42 U.S.C. § 1983. See Kimes, 84 F.3d at 1127; Guillory, 731 F.2d at 1382; Riese v. County of Del Norte, 2014 U.S. Dist. LEXIS 116255, *19 (N.D. Cal. Aug. 19, 2014). Therefore, the defense is legally insufficient as to the federal claims.

With respect to the state law causes action, the Ninth Circuit has held that, despite holdings by some lower California appellate courts, the California Supreme Court would maintain its

---

[16] California Government Code § 821.6 reads: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

holding in *Sullivan v. County of L.A.*, 12 Cal.3d 710 (1974) that § 821.6 is confined to malicious prosecution actions. Garmon v. County of L.A., 828 F.3d 837, 847 (9th 2016). Here, Neylon does not bring any state law malicious prosecution claims. Therefore, pursuant to *Garmon*, § 821.6 is legally insufficient to defeat liability on any of Neylon's claims.

However, the Court cannot say that § 821.6 does not have any potential application in this case. The California Supreme Court has held that, while § 821.6 does not immunize officers for false imprisonment, it does immunize officers for injuries caused by conduct that occurred after the false imprisonment ended, even if that conduct was causally related to the false imprisonment. Asgari, 15 Cal.4th at 757-58; Gillan, 147 Cal.App.4th at 1049; see also Cousins v. Lockyear, 568 F.3d 1063, 1071-72 (9th Cir. 2009); Alvarez-Machain v. United States, 331 F.3d 604, 637 (9th Cir. 2003) (en banc).[17] A false imprisonment ends when a plaintiff is in custody pursuant to lawful process, such as through an arraignment. Asgari, 15 Cal.4th at 757; Gillan, 147 Cal.App.4th at 1049. Here, Defendants represent that criminal charges were filed against Neylon on December 8, 2015. But, Defendants do not state when Neylon was arraigned or otherwise in custody pursuant to lawful process. At this time, it is unclear when Neylon was in custody after lawful process and whether Neylon is attempting to recover damages for such a period of time. Because it is possible that § 821.6 may preclude some of the damages sought by Neylon, the Court cannot hold at this time that § 821.6 is entirely legally insufficient. See Gomez, 188 F.Supp.3d at 991.

In terms of factual sufficiency, the ninth affirmative defense is broadly alleged and suffers from similar problems as the seventh affirmative defense. Based on the opposition and the analysis above, there are limitations to § 821.6's potential application in this case. The defense is alleged in an overly broad manner without limitations and does not identify when Neylon was arraigned or in custody pursuant to lawful process. Thus, the ninth affirmative defense does not provide fair notice of the nature and basis of the § 821.6 immunity and thus, does not provide "fair notice." See Gomez, 188 F.Supp.3d at 992. The ninth affirmative defense will be stricken, but leave to amend will be granted. See Wyshak, 607 F.2d at 827; Gomez, 188 F.Supp.3d at 993.

---

[17] Reversed on other grounds sub nom Sosa v. Alvarez-Machain, 542 U.S. 692 (2004).

### 10. Tenth Affirmative Defense – Probable Cause

*Plaintiff's Argument*

Neylon argues that probable cause is not an affirmative defense, but is an improperly pled negative defense that asserts an alternative set of facts that contradicts Neylon's version.

*Defendants' Opposition*

Defendants state that they asserted probable cause as an affirmative defense out of an abundance of caution because some courts within the Eastern District of California have found that it was with respect to false imprisonment. However, Defendants recognizes that the absence of probable cause is an element that Neylon must prove to establish most of her claims and thus, to that extent, it is not an affirmative defense. Defendants state that they have advised Neylon's counsel that they are willing to dismiss this affirmative defense, although doing so seems unnecessary as there is no surprise to its assertion.

*Discussion*

The Court takes Defendants to mean that they do not oppose striking the tenth affirmative defense because Neylon must prove probable cause for many of her claims. That is, the Court reads the opposition as willing to accept Neylon's position. Given Neylon's argument and Defendants' non-opposition, the Court will strike the tenth affirmative defense. However, the Court notes that the absence of probable cause is a necessary element of a 42 U.S.C. § 1983 false arrest claim. <u>Yousefian v. City of Glendale</u>, 779 F.3d 1010, 1014 (9th Cir. 2015). The presence or absence of probable cause is clearly an issue in this case, and it is beyond doubt that Defendants are contending that probable cause existed. Therefore, while the Court will strike the tenth affirmative defense, the Court is not precluding Defendants from arguing that probable cause existed to detain and arrest Neylon for purposes of false arrest and false imprisonment.

//
//
//
//
//

# **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to strike (Doc. No. 56) is DENIED with respect to Affirmative Defenses One and Two;

2. Plaintiff's motion to strike is otherwise GRANTED and Affirmative Defenses Three, Four, Five, Six, Seven, Eight, Nine, and Ten are STRICKEN;

3. Within fourteen (14) days of service of this order, Defendants may file an amended answer, that is consistent with the analysis of this order, with respect to Affirmative Defenses Seven, Eight, and Nine;[18]

4. If Defendants do not file a timely amended answer, leave to amend shall be automatically revoked without further order or notice, and the operative answer will be deemed to be Document No. 55, but without the affirmative defenses that have been stricken through this order.

IT IS SO ORDERED.

Dated:   August 25, 2017                    _____

SENIOR  DISTRICT  JUDGE

---

[18] The Eighth Affirmative Defense may only be amended to apply to the claim of intentional infliction of emotional distress.  Further, if Defendants choose to file an amended answer, they shall amend Affirmative Defenses One and Two to limit those defenses to particular defendants and particular claims.